Daniel Valles (SBN 269137)
Kayla M. Rathjen (SBN 330046)
**VALLES LAW, P.C**
1230 Rosecrans Avenue, Suite 300
Manhattan Beach, CA 90266
Telephone:    (415) 234-0065
Facsimile:    (510) 369-2075

Attorneys for Plaintiffs
JULIE WORKINGER AND JANELLE HILES

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JANELLE HILES and JULIE WORKINGER | Case No. 3:24-cv-8186 |
| Plaintiffs,<br><br>vs.<br><br>WALKME, INC. and JAMES STEVEN SPARKS<br><br>Defendants. | **COMPLAINT FOR:** |

1. **SEX DISCRIMINATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964 (42 U.S.C. §§ 2000E ET AL.)**

2. **AGE DISCRIMINATION IN VIOLATION OF THE AGE DISCRIMINATION IN EMPLOYMENT ACT (29 U.S.C. §§ 621-634)**

3. **DISCRIMINATION IN VIOLATION OF FEHA (GOV. CODE §12940(A))**

4. **HARASSMENT IN VIOLATION OF FEHA (GOV. CODE §12940(J))**

5. **FAILURE TO PREVENT DISCRIMINATION, HARASSMENT, AND RETALIATION IN VIOLATION OF FEHA (GOV. CODE §12940(K))**

6. **INTENTIONAL INFLICATION OF EMOTIONAL DISTRESS**

7. **NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**

8. **WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY**

9. **BREACH OF CONTRACT**

- 1 -

COMPLAINT

10.  **PROMISSORY ESTOPPEL**

11.  **UNLAWFUL BUSINESS PRACTICES (BUSINESS AND PROFESSIONS CODE §17200)**

**DEMAND FOR JURY TRIAL**

Plaintiffs Julie Workinger ("**Workinger**") and Janelle Hiles ("**Hiles**") (collectively, the "**Plaintiffs**"), by and through their attorneys of record, hereby alleges the following Complaint against Defendant WalkMe, Inc. ("**WalkMe**") and James Steven Sparks ("**Sparks**") (collectively as "**Defendants**") as follows:

## PRELIMINARY STATEMENT

1.      Plaintiffs bring this action against Defendant for violations of, among other things, Title VII of the federal Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("**Title VII**"), the California Fair Employment and Housing Act, Cal. Gov. Code §§ 12940 et seq. ("**FEHA**"), the Age Discrimination in Employment Act, 29 U.S.C. §§ 621-634 ("**ADEA**"), and the California Business and Professions Code §17200.

2.      WalkMe hired Workinger in or around January 2021 and Hiles in or around January 2020 as Enterprise Account Executives ("**Enterprise AE**").  During Plaintiffs' tenure at WalkMe, they performed better than a vast majority of their younger male colleagues.  Despite their many achievements, Defendant discriminated against Plaintiffs because of their sex and age.

3.      Plaintiffs seek all appropriate relief, including, but not limited to, backpay, front pay, compensatory damages, punitive damages, and attorneys' fees and costs.

4.      Plaintiffs also demand a jury trial on all claims so triable.

## THE PARTIES

5.      Plaintiffs are women and U.S. Citizens.  Hiles is presently a resident of the State of Colorado, County of Denver, and Workinger is presently a resident of the State of Florida, County of Lee.  However, during her tenure with WalkMe, Workinger was also resident of the State of Illinois, County of McHenry

6.      During their tenure with WalkMe, Plaintiffs were employed by and performed services for WalkMe in both the County of San Francisco in the State of California and out of their home offices in the County of Denver, the County of McHenry, and County of Lee.

7.      Defendant Sparks is presently a resident of South Carolina.

8.      Plaintiffs are informed and believe that Defendant WalkMe is presently a Delaware Corporation headquartered in San Francisco, California and that it does business in and employs

COMPLAINT

individuals in the County of San Francisco as well as employed individuals in the County of San Francisco as well as from their home offices in various other counties throughout the United States.

9. WalkMe maintains its principal place of business and corporate office in California at 350 Mission Street, Floor 26 in San Francisco, California.

10. WalkMe is an employer as defined by Title VII and therefore subject to the jurisdiction of this Court.

11. WalkMe was also Plaintiffs' employer within the meaning of California Government Code §§ 12926(d), 12940 (a), (h), (l), (h) (3) (A) and (i), and 12950, and the California Labor Code, and regularly employ five (5) or more persons and are therefore subject to the jurisdiction of this Court

12. The true names and capacities, whether individual, corporate, associate, or otherwise of the Defendants named herein as DOES 1-50, inclusive, are unknown to Plaintiffs at this time and therefore said Defendants are sued by such fictitious names. Plaintiffs will seek leave to amend this Complaint to insert the true names and capacities of said Defendants when the same become known to Plaintiffs. Plaintiffs are informed and believe and thereupon allege that each of the fictitiously named Defendants are responsible for the wrongful acts alleged herein and are therefore liable to Plaintiffs as alleged hereinafter.

13. Plaintiffs are informed and believe, and based thereupon allege, that at all times relevant hereto, Defendants, and each of them, was the agents, employees, managing agents, supervisors, conspirators, parent corporation, joint employers, alter ego, and/or joint ventures of the other Defendant, and each of them, and in doing the things alleged herein, was acting at least in part within the course and scope of said agency, employment, conspiracy, joint employment, alter ego status, and/or joint venture and with the permission and consent of each of the other Defendant.

14. Plaintiffs are informed and believe, and based thereupon allege, that Defendants, and each of them, including those Defendants named DOES 1-50, acted in concert with one another to commit the wrongful acts alleged therein, and aided, abetted, incited, compelled, and/or coerced one another in the wrongful acts alleged herein, and/or attempted to do so. Plaintiffs are further informed and believe, and based thereupon allege, that the Defendants, and each of them, including those

COMPLAINT

Defendants named as DOES 1-50, formed and executed a conspiracy or common plan pursuant to which they would commit the unlawful acts alleged herein, with all such acts alleged herein done as part of and pursuant to said conspiracy, intended to and actually causing Plaintiffs harm.

15.    Whenever and wherever reference is made in this Complaint to any act or failure to act by a Defendant or co-Defendant, such allegations and references shall also be deemed to mean the acts and/or failures to act by each Defendant acting individually, jointly, and severally.

## JURISDICTION AND VENUE

16.    This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, because this is a civil action arising, in part, under Title VII and the ADEA.  This Court has supplemental jurisdiction over Plaintiffs' related claims arising under state and local laws pursuant to 28 U.S.C. § 1367(a).

17.    Furthermore, this Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1), because this is a civil action between citizens of both Florida and California as well as Colorado and California, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

18.    Venue is proper in this District under 28 U.S.C. § 1391(b) and 42 U.S.C. § 2000e-5(f)(3), because the unlawful employment practices alleged herein (including, but not limited to the decision to terminate their employment) were committed in California, the relevant employment records to those practices are maintained and administered in this district, Plaintiffs would have performed work in this district but for the alleged unlawful employment practice, WalkMe conducts substantial business in San Francisco and WalkMe has its principal office in San Francisco.

## ALTER EGO, AGENCY, AND JOINT EMPLOYER

19.    Plaintiffs are informed and believe, and based thereon alleges, that there exists such a unity of interest and ownership between Defendants and DOES 1-50 that the individuality and separateness of Defendant have ceased to exist.

20.    Plaintiffs are informed and believe, and based thereon alleges, that despite the formation of purported corporate existence, DOES 1-50 are, in reality, one and the same as Defendants, including, but not limited to because:

a. Defendants are completely dominated and controlled by DOES 1-50, who personally violated the laws as set forth in this complaint, and who have hidden and currently hid behind Defendants to circumvent statutes or accomplish some other wrongful or inequitable purpose.

b. DOES 1-50 derive actual and significant monetary benefits by and through Defendants' unlawful conduct, and by using Defendants as the funding source for their own personal expenditures.

c. Plaintiffs are informed and believe that Defendants and DOES l-50, while really one and the same, were segregated to appear as though separate and distinct for purposes of circumventing a statute or accomplishing some other wrongful or inequitable purpose.

d. Plaintiffs are informed and believe that Defendants do not comply with all requisite corporate formalities to maintain a legal and separate corporate existence.

e. Plaintiffs are informed and believe, and based thereon alleges, that the business affairs of Defendants and DOES 1-50 are, and at all times relevant were, so mixed and intermingled that the same cannot reasonably be segregated, and the same are in inextricable confusion. Defendants are, and at all times relevant hereto were, used by DOES 1-50 as a mere shell and conduit for the conduct of certain of Defendants' affairs, and are, and were, the alter ego of DOES 1-50. The recognition of the separate existence of Defendants would not promote justice, in that it would permit Defendants to insulate themselves from liability to Plaintiffs for violations of the Government Code, Labor Code, and other statutory violations. The corporate existence of Defendants and DOES 1-50 should be disregarded in equity and for the ends of justice because such disregard is necessary to avoid fraud and injustice to Plaintiffs herein.

21. Accordingly, Defendants constitute the alter ego of DOES 1-50, and the fiction of their separate corporate existence must be disregarded.

22. As a result of the aforementioned facts, Plaintiffs are informed and believe, and based thereon alleges that Defendant and DOES 1-50 are Plaintiffs' joint employers by virtue of a joint enterprise, and that Plaintiffs was an employee of Defendants and DOES 1-50. Plaintiffs performed services for each and every one of Defendant, and to the mutual benefit of all Defendants, and all Defendants shared control of Plaintiffs as employees, either directly or indirectly, in the manner in

COMPLAINT

which Defendants' business was and is conducted.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

23. On or about November 14, 2023, Workinger timely filed a charge of sex discrimination with the Equal Employment Opportunity Commission ("**EEOC**"). EEOC Charge was filed in a timely manner because Workinger filed the EEOC Charge within 300 days of Workinger's termination.

24. On April 10, 2024, Hiles timely filed a charge of sex discrimination with the EEOC. EEOC Charge was filed in a timely manner because Plaintiffs filed the EEOC Charge within 300 days of Hiles' termination.

25. On or about September 9, 2024, the EEOC issued Plaintiffs a Notice of Right to Sue. This Complaint has been filed within ninety (90) days of receipt of that notice. Plaintiffs have fully complied with all prerequisites to jurisdiction in this Court under Title VII.

26. The EEOC and the California Department of Fair Employment and Housing ("**DFEH**"), now the California Civil Rights Department ("**CRD**") have a work-sharing agreement and, as such, Plaintiffs' complaint was dual filed with the CRD. The CRD complaint was filed in a timely manner pursuant to Cal. Gov. Code § 12960(e)(5) insofar as it was filed within three (3) years of the last date that Plaintiffs were subjected to unlawful discrimination under the FEHA. Thus, within the time provided by FEHA and in compliance with the requirements of FEHA, Plaintiffs filed a complaint with the CRD and Plaintiffs have received a right to sue letter from the CRD as well.

27. As a result of the foregoing, Plaintiffs have satisfied their administrative prerequisites with respect to these and all related filings.

## FACTUAL ALLEGATIONS

28. Defendants have a pattern and practice of discriminating against females and, in particular older females, in the workforce, in violation of FEHA, Title VII, and the ADEA.

29. Workinger is a 58-year-old female that began her employment with WalkMe on or about January 4, 2021, as an Enterprise AE. Workinger has been discriminated against as well as singled out because of her sex, gender, and age as described herein.

30. Hiles is a 48-year-old female that began her employment with WalkMe on or about

January 15, 2020, as an Enterprise AE.  Hiles has been discriminated against as well as singled out because of her sex, gender, and age as described herein.

### *Plaintiff Are Blindsided by a Discriminatory Termination*

**<u>Workinger's Termination:</u>**

31. On or about August 4, 2023, Workinger was given oral notice by Connie Meisel ("**Meisel**"), People Team Business Partner, and James Garner ("**Garner**"), the Director of Enterprise Sales and who is Workinger's supervisor, that she was terminated due to alleged "performance." Workinger was blindsided by this termination, as it came out of the blue after coming back to work from a vacation on August 1, 2023.  In fact, before her termination, Workinger had not previously received any form of negative feedback regarding her performance; quite the opposite, Workinger was ranked the second-best sales representative in WalkMe's Central Sales Territory.

32. The day before her termination, on August 3, 2023, Workinger had a deal review with Garner and Sparks, the Vice President of North America Enterprise Sales, along with Eric Baird, the Director of Sales Engineering ("**Baird**").  Workinger, as always, presented a detailed synopsis of her upcoming, imminent deals, which in and of themselves would land her at the 70% mark of her total sales quota for the year.  After the review discussion, Sparks requested that Workinger email them a copy of her spreadsheet for notetaking purposes.

33. At 9:30 p.m. that same evening (i.e., August 3, 2023), Workinger received an email from Garner which purported to summarize how the deal review allegedly could have gone better. Generally speaking, the email made little to no sense, and it appeared to try to lay the foundation for what Garner and WalkMe intended to do the next day (i.e., terminate Plaintiff).

34. Plaintiff already had a pre-scheduled one-on-one call with Garner for August 4, 2023, wherein they had planned to discuss action items for Q4.

35. As a result, Workinger hopped on a call with Garner the next day (i.e., August 4, 2023), expecting to discuss the above referenced email from the night before in addition to resolving several inaccuracies regarding Workinger's commissions, which had **not** been paid to date by WalkMe and which Workinger had previously complained about not receiving.  Instead of having her one-on-one meeting with Garner, Workinger was blindsided with a termination call between herself, Garner and

COMPLAINT

Meisel from Human Resources, who joined the call as well.

36. On the aforementioned call, Workinger was informed that WalkMe was terminating her employment and that, by the close of the call, Workinger would no longer have access to WalkMe's systems.

37. Totally caught off guard, Workinger was dumbfounded and had numerous questions running through her mind, namely the basis for her termination. When asked what the basis was, Meisel stated the termination decision was allegedly "performance based."

38. Even more confused with Meisel's stated reason, Workinger complained that the proffered reasons for her termination were merely pretext as Workinger expressly pointed out that she was ranked second (#2) in the Central Region for sales, had approximately $600,000 on the bubble that was set to close shortly, and, on top of all that, management had *never* raised issues with her performance before. After pointing this out, Workinger went on to complain to Meisel and Garner that her termination could not possibly be performance-based, but, rather, was because of her age as well as her sex/gender.

39. Garner could not even look Workinger in the eyes, instead keeping his head down throughout the duration of the call. Meisel stated that the decision to terminate Workinger was not because of her age or gender as "that would be illegal;" however, it is clear that is exactly what Garner, Meisel and Workinger were doing.

40. Workinger also complained that she had not received her full commission payouts for her previous closed deals. In response, Garner promised Workinger that WalkMe would accurately and correctly pay her full commissions.

41. However, despite sending no less than four (4) follow-up correspondences to numerous people at WalkMe, Workinger never received full payment of her earned commissions.

42. Additionally, Workinger also inquired if she would be receiving commissions for the $500,000 worth of business that was expected to be finalized in the coming few weeks that Workinger put substantial work into. Meisel and Garner made assurances to Workinger commission payments on her expected deals that were set to close would be handled by Finance; however, such payments never materialized either despite the deals closing.

COMPLAINT

43.    Moreover, no documentation has ever been provided as to what accounts and renewals were paid, at what amounts, and what bonuses despite being requested by Workinger. In fact, no reconciliation of earnings has ever been provided to Workinger.

44.    WalkMe has also refused to provide Workinger with access to her paystubs.

45.    In order to access her paystubs in ADP, Workinger was informed by Meisel that she needed a "BCR" code from WalkMe.  Workinger sent Meisel four (4) different email communications to Meisel requesting the "BCR" code so she could access her paystubs, but Meisel never responded to Workinger.

**Plaintiff Hiles' Termination:**

46.    On August 4, 2023 (i.e., the same date that Workinger was terminated), Hiles was also given oral notice by Meisel and Garner, who is also Hiles' supervisor, that she was terminated due to alleged "performance" as well.  However, unlike Workinger's termination, which was effective immediately, Hiles termination was effective August 7, 2023

47.    Like Workinger, Hiles was blindsided by her termination, as it came out of the blue. In fact, before her termination, Hiles had not previously received any form of negative feedback regarding her performance.

48.    On or about August 3, 2023, Hiles had a deal review with Garner and Sparks along with Baird.  Hiles, as always, presented a detailed synopsis of her upcoming, imminent deals.

49.    Despite the review discussion going well, Sparks directed comments towards Hiles and the female salespeople, implying that they should be handling sales differently and that the sales tactics utilized by the male sales employees were coachable tactics.  This type of behavior by an executive-level employee only encouraged other male employees to act discriminately towards female employees. By way of example, after wrapping up her presentation, the men on the sales team told Hiles that she resembled Vanna White while she presented her sales deals to the team.

50.    In fact, since Garner and Sparks joined WalkMe, along with the Chief Revenue Officer Scott Little ("**Little**") in 2022, the culture of the sales team began declining for the worse.  Little hired Garner as he had worked with him in a previous job.

51.    Both Garner and Little have only hired men to join the sales team, all the while

COMPLAINT

selecting women for layoff.

52.     Despite other male sales employees performing worse or the same as her, Hiles was laid off due to her alleged "poor job performance."

53.     Totally caught off guard, Hiles was dumbfounded and had numerous questions running through her mind, namely the basis for her termination, which Meisel stated the termination decision was "performance based."  Hiles complained that this was mere pre-text as she was performing at the same caliber as many other AEs – in fact, two male AEs that Garner hired had never closed a single sales deal as of the date of Hiles' termination, yet they were not laid off or terminated – and on top of all that, management had _never_ raised issues with her performance before.  Knowing this, Hiles complained to HR this could not be performance-based, and as such, she believed this was based on her age as well as her sex/gender.

54.     Hiles also complained about WalkMe's failure to pay her commission on a $202K deal, which would result in a $42K commission.

55.     On August 16, 2023, WalkMe, through Meisel and Garner, promised Hiles that WalkMe would pay the commissions owed to her.  However, despite making that promise, Hiles was never paid the commission to which she is entitled.

56.     Hiles followed up in email regarding the owed commissions on October 17, 2023, but was still not paid and, to date, it still remains outstanding.

57.     Moreover, no documentation has ever been provided to Hiles as to what accounts and renewals were paid, at what amounts, and what bonuses.  In fact, no reconciliation of earnings has ever been provided to Hiles.

### Plaintiffs Were Discriminated Against Based on Sex

58.     Little to no analysis is required to conclude that Plaintiffs were let go **not** because of their performance, but because of their age, sex and gender.

59.     As of the date of her termination, Workinger had closed $305,000 in sales, but she was closing in on a total of $802,000 in sales. As of the date of Hiles' termination, she had closed $258,000 in sales.

60.     The following male AEs are just an example of numerous male AEs that had worse or

COMPLAINT

equivalent sales numbers (there are additional ones not included here as well) at the time of Plaintiffs' terminations:

- **Ken Badgley**, Enterprise Central AE: **$256,000**
- **Frank Evans**, Enterprise Central AE: **$82,000**
- **Cory Bach**, Enterprise Central AE: **$0**
- **Brad Evans**, Enterprise West AE: **$302,000**
- **Rob Guarino**, Enterprise West AE: **$0**
- **Michael O'Sullivan**, Enterprise East AE: **$243,000**
- **Brandon Franke**, Enterprise East AE: in two (2) years of employment, he sold **$0.00** total.
- **Jeremey Webb,** Enterprise East AE:  **$97,000**

61.     Plaintiffs are also informed that Cory Bach and Frank Evans were hired by Garner and worked with him at Oracle prior to working together at WalkMe.

62.     Additionally, Enterprise AEs typically have quotas between $900K - $1.2M.  This means that all of the foregoing men have equivalent or significantly lower quota attainment than Plaintiffs (which is described below):

- **Ken Badgley**: a **21%** quota attainment (based on assumed high end of $1.2M quota) or at best a **28%** quota attainment (based on an assumed low end of $900K quota)
- **Frank Evans**: a **7%** quota attainment (based on assumed high end of $1.2M quota) or at best a **9%** quota attainment (based on an assumed low end of $900K quota)
- **Cory Bach**: a **0%** quota attainment (based on any quota)
- **Brad Evans**: a **25%** quota attainment (based on assumed high end of $1.2M quota) or at best a **33%** quota attainment (based on an assumed low end of $900K quota)
- **Rob Guarino**: a **0%** quota attainment (based on any quota)
- **Michael O'Sullivan**: a **20%** quota attainment (based on assumed high end of $1.2M quota) or at best a **27%** quota attainment (based on an assumed low end of $900K quota)
- **Brandon Franke**: a **0%** quota attainment (based on any quota)

COMPLAINT

- **Jeremey Webb**: an **8%** quota attainment (based on assumed high end of $1.2M quota) or at best a **11%** quota attainment (based on an assumed low end of $900K quota)

63.    In comparison, Plaintiffs performed better or equal to the male AEs listed above.  In fact, they had a quota achievement as follows:

- **Julie Workinger**: a **26%** quota attainment (based on a $1,150,000 quota) and would have been 34% if she had a low-end quota of $900K.

- **Janelle Hiles**: a **29%** quota attainment (based on an assumed low end of $900K quota)

64.    Our office is also aware of numerous other female AEs that were terminated who also performed better or equal to the male AEs listed above, including, but not limited to Maureen Moons.

65.    Again, excluding the incoming deals that were set to close imminently, Plaintiffs both achieved a quota attainment of over 26% as of their termination dates, which is equal to or better than all of the men listed above; however, **none of these** men were terminated.

66.    And, this is not even factoring in the 70% quota attainment Workinger would have achieved within weeks had WalkMe not unlawfully terminated her.  Within weeks, Workinger had a conservative figure of $970K coming in through numerous deals.  With these close-to-close deals, coupled with the $305K already closed, Workinger stood at $1.28M in sales and potential sales, which would have been 111% of her quota.  Conservatively, if one were to take an 80% close rate for the close-to-close deals, Workinger still would have been at 89% of her quota. Yet, Workinger, as a female, was clearly let go because of sex.

67.    Apparently, if Plaintiffs were men, they would not have had to work as hard and still keep their job given that none of the foregoing men were terminated despite worse performance numbers than Plaintiffs.

### *Plaintiffs Were Discriminated Against Based on Age*

68.    Moreover, it should be noted that it has become evident that WalkMe's motivation was also based on Plaintiffs' age when evaluating the ages of all of the comparable AEs that were not terminated despite worse performance numbers than Plaintiffs as they are almost all younger than

Plaintiffs (Workinger: 57 and Hiles: 47):

- Ken Badgley: 56
- Frank Evans: 41
- Cory Bach: 54
- Michael O'Sullivan: 57
- Brandon Franke: 48
- Matt Anderson: 44
- Jeremey Webb: 38
- Justin Baker: 39
- Rob Guarino: Approximately 34

69.     Therefore, Plaintiffs were being singled out not just because of their sex and gender, but also because of their age.  The numbers speak for themselves, but even so, WalkMe's work culture screamed boys' club based on the way the Company's leaders interacted with and spoke against women.  By way of example:

- On several occasions Sparks harassed Workinger questioned her saying things like "You don't plan on working much longer anyway, do you?"  and "You have a husband, right? Can't he support you?"

- During a debrief after a call with in-house counsel for a Walk Me client, who was also an older woman, Sparks said, "I don't expect much out of [the client's female counsel]. What was with all those hair flips? It's just someone trying to be attractive. Maybe she was attractive in her earlier years, but seriously?"

- Another sales rep, Chad Jennings ("**Jennings**"), was given a sales club trip to Costa Rica in 2022.  In Costa Rica, Jennings was arrested for fighting with his wife. Dan Adika, the Company's CEO ("**Adika**"), bailed him out of jail.  The fight occurred because Jennings was "grinding" with a woman (who was apparently WalkMe's CHRO) in their string bikini on the dancefloor.  Sparks, in giving his input on the altercation, stated, "Well, you know [Jennings is] married to a Latin woman. They are so hotheaded, and I'm sure she was the reason." Jennings was then promoted to a director position under Sparks.

- 14 -

COMPLAINT

70.    It's no secret that WalkMe is on a crusade of terminating older women. It's happening left and right. Yet, men have free reign, not only to ignore their sales numbers, but also to make comments that create a chauvinistic and toxic workplace culture. Plaintiffs were performing better than, or at least equal to, the standards set for men at WalkMe. Therefore, there can be no reason for their termination aside from sex and age discrimination.

**FIRST CAUSE OF ACTION**

SEX DISCRIMINATION IN VIOLATION OF TITLE VII

(42 U.S.C. §§ 2000e et al.)

(Against WalkMe)

71.    Plaintiffs repeat and reallege all of the allegations set forth in the preceding paragraphs as if the same were fully set forth herein and with the same full force and effect.

72.    Title VII provides liability for both disparate treatment, where an action is taken with a discriminatory intent or motive, and disparate impact, where a facially neutral practice falls more harshly on a protected group without justification by a business necessity. *Young v. United Parcel Serv., Inc.*, 135 S. Ct. 1338, 1361 (2015). Disparate treatment is intentional discrimination that focuses on discriminatory intent. *Watson v. Fort Worth Bank Tr.*, 487 U.S. 977, 1002 (1988); *Pesterfield v. Tenn. Valley Auth.*, 941 F.2d 437, 443 (6th Cir. 1991). Disparate impact occurs where an employer applies a facially neutral rule that treats everyone equally in form but has a negative impact on some members of a protected class as compared to others outside of the class. *Griggs v. Duke Power Co.*, 401 U.S. 424, 429-30 (1971); *Bacon v. Honda of Am. Mfg., Inc.*, 370 F.3d 565, 576 (6th Cir. 2004).

73.    Title VII bans discrimination because of sex, which encompasses the entire spectrum of disparate treatment of men and women, including the biological differences between the sexes and discrimination based on a failure to conform to stereotypical gender norms. *L.A. Dept. of Water Power v. Manhart*, 435 U.S. 702, 708 (1978); *Smith v. City of Salem*, 378 F.3d 566, 573 (6th Cir. 2004). Under the McDonnell Douglas burden-shifting framework, the plaintiff bears the initial burden of establishing a prima facie case of discrimination by pointing to evidence in the record showing that: (1) plaintiff is a member of a protected class; (2) plaintiff was qualified for his or their position;

(3) plaintiff was subjected to an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent, such as when the position remained open or was filled by a person with similar qualifications. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 792-93 (1973); *In re Rodriguez*, 487 F.3d 1001, 1008 (6th Cir. 2007). A plaintiff's initial burden in the McDonnell Douglas burden-shifting framework is not onerous and the degree of proof for a prima facie case is minimal. *Tex. Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981).

74. Plaintiffs are female and are part of a protected class.

75. To establish a prima facie case of discrimination, the plaintiff must have been qualified for the position. *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 572-73 (6th Cir. 2000). In determining whether a plaintiff is qualified for a position, the court considers whether the plaintiff was satisfactorily performing the job. *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 572-73 (6th Cir. 2000).

76. Plaintiffs were qualified for their positions when WalkMe fired them.  When compared to their male counterparts, Plaintiffs were satisfactorily performing their job. They had better or equal sales numbers compared to *eight* (8) male AEs.

77. The same goes for quota attainment. If Plaintiffs had not been satisfactorily performing their job, then these eight (8) other male AEs surely were grossly failing to meet sales standards. WalkMe cannot have it both ways – it cannot claim that Plaintiffs were underperforming all the while claiming that these eight (8) men were performing up to its satisfaction.

78. A showing that the employer treated the plaintiff less favorably than a similarly situated employee outside the plaintiff's protected group is a recognized method of raising an inference of discrimination for purposes of making out a prima facie case. *Butcher v. Gerber Prods. Co.*, 88 F. Supp. 2d 788, 794 (W.D. Mich. 2000); *Conward v. Cambridge Sch. Comm.*, 171 F.3d 12, 20 (1st Cir. 1999).

79. Defendants discriminated against Plaintiffs by subjecting them to different treatment because of and based on their sex and gender, including by holding them to stricter standards of conduct and subjecting them to harsher discipline and by terminating them.

80. Defendants, including Plaintiffs' supervisor Garner, marginalized Plaintiffs while treating similarly situated male employees more favorably. Specifically, Plaintiffs' male colleagues were not subjected to the same treatment. Despite eight (8) other male AEs not performing as well as Plaintiffs, they were still the employees selected for layoff. This is blatant illustration of female AEs being treated less favorably than not one, but multiple male AEs.

81. An adverse employment action is broadly defined and covers an employer's action that would have dissuaded a reasonable employee from making or supporting a discrimination charge. It is not limited to discrimination in compensation, terms, conditions, or privileges of employment. *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006); *Taylor v. Geithner*, 703 F.3d 328, 340 (6th Cir. 2013).

82. Defendants subjected Plaintiffs to multiple adverse employment actions as alleged herein above.  Plaintiffs' employment was terminated, which is the ultimate demonstration of an adverse employment action.

83. Plaintiffs' sex and gender was a motivating factor in Defendants' adverse actions against them, including Defendants' decision to terminate their employment.

84. As a direct and proximate result of Defendants' violations of Title VII, Plaintiffs have suffered harm and will continue to suffer economic and non-economic damages for which WalkMe is liable, including but not limited to emotional distress and the loss of past and future earnings and benefits, in an amount to be proven at trial.

85. As a result of Defendants' unlawful acts and omissions, Plaintiffs are entitled to compensatory damages, equitable relief, attorneys' fees, and costs.

86. Defendants committed the acts herein alleged maliciously, fraudulently, and oppressively, and/or with reckless indifference for Plaintiffs' federally protected rights. The discriminatory practices alleged above was engaged in and/or ratified by the officers, directors, supervisors and/or managing agents of WalkMe and each of them, who were acting at all times relevant to this Complaint within the scope and course of their employment. Pursuant to 42 U.S.C. § 1981(a)-(b), WalkMe is liable for punitive damages and Plaintiffs are entitled to recover punitive damages from WalkMe in an amount according to proof.

**SECOND CAUSE OF ACTION**

AGE DISCRIMINATION IN VIOLATION OF THE ADEA

(29 U.S.C. §§ 621-634)

(Against WalkMe)

87.     Plaintiffs repeat and reallege all of the allegations set forth in the preceding paragraphs as if the same were fully set forth herein and with the same full force and effect.

88.     The ADEA makes it unlawful for an employer to discriminate against any individual because of the individual's age.  29 U.S.C. § 623(a); *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 120 (1985); 29 C.F.R. § 1625.2.

89.     Under the ADEA, it is unlawful for an employer: (1) to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age; (2) to limit, segregate, or classify his employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's age; or (3) to reduce the wage rate of any employee in order to comply with the ADEA. 29 U.S.C. § 623(a). If an employer grants some employees a "privilege of employment," it cannot deprive other employees of that privilege because of their age. 29 U.S.C. § 623(a); *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 120-121 (1985).

90.     Under the McDonnell Douglas burden-shifting framework, the plaintiff bears the initial burden of establishing a prima facie case of age discrimination by pointing to evidence in the record showing that the plaintiff was: (1) within the protected class of individuals 40 or older; (2) qualified for the position; (3) subject to an adverse employment action; and (4) either replaced by substantially younger employees with equal or inferior qualifications or discharged under circumstances otherwise giving rise to an inference of discrimination. *Mitchell v. Vanderbilt University*, 389 F.3d 177, 181 (6th Cir. 2004).

91.     To establish a prima facie case of age discrimination under the ADEA, the plaintiff must be a member of the protected class of individuals aged 40 or older. *Deleon v. Kalamazoo Cnty. Rd. Comm'n*, 739 F.3d 914, 918 (6th Cir. 2014).

92. Workinger was 57 years old and Hiles 47 when they were terminated, so they are members of a protected class by being older than 40.

93. To satisfy the second element of the test, plaintiff need only minimally demonstrate the basic skills necessary for performance of the job. Proof of superiority, flawless performance, or lack of any misconduct is not required. *Flowers v. WestRock Servs.*, 979 F.3d 1127, 1132 (6th Cir. 2020).

94. Plaintiffs were qualified for their positions. They had the basic skills necessary to perform the job. This much is made clear by the fact that they hit numbers higher than numerous other AEs at WalkMe.

95. The ADEA defines an adverse employment action as discrimination with respect to the compensation, terms, conditions, or privileges of employment. 29 U.S.C. § 623(a); *Kentucky Ret. Sys. V. Equal Emp't Opportunity Comm'n*, 554 U.S. 135, 151 (2008).

96. Defendants subjected Plaintiffs to several adverse employment actions, like terminating them.

97. Patterns, sequence of events, timing, and departures from the normal procedural sequences and normal substantive criteria may lead to an inference of intent to discriminate. *Coburn v. Rockwell*, 238 F. App'x 112, 126-27 (6th Cir. 2007). The similarly situated analysis is a flexible, common-sense examination of all relevant factors to determine whether the alleged comparator is directly comparable to the plaintiff in all material respects, even if he or she is not comparable in every conceivable way. *Lewis v. City of Detroit*, No. 16-1132, at *22 (6th Cir. July 14, 2017).

98. It is evident that terminating Plaintiffs had nothing to do with their job performance but had everything to do with their age. Despite these eight (8) individuals' sales numbers being lower than Plaintiffs, they still were singled out and selected for termination because they are older than these individuals.

99. As a direct and proximate result of Defendants' violations of ADEA, Plaintiffs have suffered harm and will continue to suffer economic and non-economic damages for which WalkMe is liable, including but not limited to emotional distress and the loss of past and future earnings and benefits, in an amount to be proven at trial.

COMPLAINT

100.    As a result of Defendants' unlawful acts and omissions, Plaintiffs are entitled to compensatory damages, equitable relief, attorneys' fees, and costs.

101.    Defendants willfully violated Plaintiffs' rights under the ADEA and, as a result, is liable for liquidated damages.

**THIRD CAUSE OF ACTION**

DISCRIMINATION IN VIOLATION OF FEHA

(California Government Code §12940(a))

(Against WalkMe)

102.    Plaintiffs repeat and reallege all of the allegations set forth in the preceding paragraphs as if the same were fully set forth herein and with the same full force and effect.

103.    At all times relevant to this action, FEHA was in full force and binding upon Defendants.  At all times relevant hereto, WalkMe was Plaintiffs' employer and, therefore, subject to FEHA.

104.    FEHA is not preempted by the Workers' Compensation Act.  *City of Moorpark v. Superior Court* (1998) 18 Cal.4th 1143, 1156.

105.    FEHA requires Defendants refrain from discriminating against any employee "in terms, conditions, or privileges of employment," including, but not limited to, terminating, or demoting such employee, on the basis of a protected characteristic, including, but not limited to sex, gender, and age.

106.    FEHA also makes it an unlawful employment practice for Defendants to discriminate against any employee based upon the perception that the employee is a member of a protected class of that the employee is taking or has taken certain actions because the employee is a member of a protected class.

107.    If an individual participates in the decision-making process, tacitly approves of the improper action, fails to take action upon learning of the unlawful conduct, or participates in the unlawful conduct that is the basis of the discriminatory condition, the individual is considered to have aided and abetted under FEHA.  *Matthews v. Superior Court* (1995) 34 Cal.App.4th 598.

108.    At all times relevant to this action, Plaintiffs were members of a protected class within

- 20 -

COMPLAINT

the meaning of California Government Code §12940 *et. seq*., because Plaintiffs are women and are over the age of 40. Defendants was aware of Plaintiffs' sex, gender, and age.

109. Additionally, Defendants perceived Plaintiffs as being members of a protected class within the meaning of California Government Code §12940 *et. seq*. Specifically, Defendants perceived Plaintiffs to be older women over the age of 40.

110. Within the time provided under FEHA, Plaintiffs filed complaints against Defendants with the CRD in full compliance with these sections and received right-to-sue letters.

111. At all times relevant to this action, Defendants unlawfully discriminated against Plaintiffs, as previously alleged, on the basis of Plaintiffs' sex, gender and age.

112. At all times relevant to this action, Plaintiffs were able to perform the essential duties of Plaintiffs' positions at WalkMe with or without reasonable accommodations. At all times relevant to this action, Plaintiffs were qualified to do their job.

113. Defendants were substantially motivated to discriminate against Plaintiffs, including, but not limited to, terminating them, because of their sex, gender, and age.

114. As a direct and proximate result of Defendants' discrimination, Plaintiffs have suffered, and continue to suffer, substantial damages including, but not limited to, back wages, future wages, lost benefits, severe emotional distress, and other pecuniary and non-pecuniary losses in an amount to be proven at trial.

115. As a further direct and proximate result of Defendants' conduct, Plaintiffs have suffered loss of financial stability, peace of mind and future security, and have suffered embarrassment, humiliation, severe mental and emotional pain and distress and discomfort, all to Plaintiffs' detriment and damage in amount not fully ascertained but with the jurisdiction of this court and subject to proof at the time of trial.

116. Plaintiffs are informed and believe, and thereon allege that the employees, officers, directors, and/or managing agents of WalkMe acted intentionally with malice and oppression, as their unlawful acts were carried out with full knowledge of the extreme risk of injury, involved, and with willful and conscious disregard for Plaintiffs' rights. They also acted fraudulently, as they willfully concealed the fact that Plaintiffs' employment rights were being violated, with the intent to deprive

Plaintiffs of employment benefits.  Accordingly, an award of punitive damages is warranted in an amount to be determined at the time of trial.

117.    Plaintiffs are informed and believe and thereon allege that the actions of WalkMe's employees, officers, directors, and/or managing agents were undertaken with the prior approval, consent, and authorization of WalkMe and were subsequently authorized and ratified by it as well by the and through its officers, directors, and/or managing agents.

118.    Pursuant to Government Code §12965(b), Plaintiffs are entitled to recover Plaintiffs' reasonable attorneys' fees and costs, including expert fees pursuant to the FEHA.

**FOURTH CAUSE OF ACTION**

HARASSMENT IN VIOLATION OF FEHA

(California Government Code §12940(j))

(Against All Defendants)

119.    Plaintiffs repeat and reallege all of the allegations set forth in the preceding paragraphs as if the same were fully set forth herein and with the same full force and effect.

120.    At all times relevant to this action, FEHA was in full force and binding upon Defendants.

121.    FEHA requires Defendants to refrain from harassing any employee on the basis of a protected characteristic, including, but not limited to gender, sex, and age.

122.    FEHA also makes it an unlawful employment practice for Defendants to harass any employee based upon the perception that the employee is a member of a protected class or that the employee is taking or has taken certain actions because the employee is a member of a protected class.

123.    Pursuant to California Government Code §12940(j)(3), WalkMe's supervisors are personally liable for any harassment prohibited by FEHA that is perpetrated by them.

124.    Plaintiffs were a member of a protected class within the meaning of California Government Code §12940 *et. seq.*, because Plaintiffs are women and over the age of 40.  Defendants were aware of the Plaintiffs gender, sex, and age.

125.    Defendants also perceived Plaintiffs as being a member of a protected class within the meaning of California Government Code §12940 *et. seq.*, namely that they are woman over the age

- 22 -

COMPLAINT

of 40.

126.    Within the time provided under FEHA, Plaintiffs filed complaints against Defendants with the CRD in full compliance with these sections and received right-to-sue letters.

127.    At all times relevant to this action, Defendants unlawfully harassed Plaintiffs, as previously alleged above, on the basis of Plaintiffs' gender, sex, and age.

128.    In addition to the foregoing, California Government Code §12940(i) also prohibits any individual from actually or attempting to aid, abet, incite, compel, or coerce the doing of any of the acts forbidden under FEHA.

129.    If an individual participates in the decision-making process, tacitly approves of the improper action, fails to take action upon learning of the unlawful conduct, or participates in the unlawful conduct that is the basis of the discriminatory condition, the individual is considered to have aided and abetted under FEHA. *Matthews v. Superior Court* (1995) 34 Cal.App.4th 598.

130.    Here, Sparks had the ability to stop the illegal activity and harassment experienced by Plaintiff; however, Sparks not only failed to take any actions to stop the discriminatory conduct, but, as alleged herein, Sparks participated in conduct and decision-making processes designed to illegally harass and discriminate against Plaintiffs as well as tacitly approved of the harassing behavior and discriminatory conduct that was undertaken towards Plaintiff.

131.    As a direct and proximate result of Defendants' harassment, Plaintiffs have suffered, and continues to suffer, substantial damages including, but not limited to, back wages, future wages, lost benefits, severe emotional distress, and other pecuniary and non-pecuniary losses in an amount to be proven at trial.

132.    As a further direct and proximate result of Defendants' conduct, Plaintiffs have suffered loss of financial stability, peace of mind and future security, and has suffered embarrassment, humiliation, severe mental and emotional pain and distress and discomfort, all to Plaintiffs' detriment and damage in amount not fully ascertained but with the jurisdiction of this court and subject to proof at the time of trial.

133.    Plaintiffs are informed and believes, and thereon alleges that the employees, officers, directors, and/or managing agents of Defendants acted intentionally with malice and oppression, as

their unlawful acts were carried out with full knowledge of the extreme risk of injury, involved, and with willful and conscious disregard for Plaintiffs' rights. They also acted fraudulently, as they willfully concealed the fact that Plaintiffs' employment rights were being violated, with the intent to deprive Plaintiffs of employment benefits. Accordingly, an aware of punitive damages is warranted in an amount to be determined at the time of trial.

134. Plaintiffs are informed and believes and thereon alleges that the actions of Defendants' employees, officers, directors, and/or managing agents were undertaken with the prior approval, consent, and authorization of Defendants and were subsequently authorized and ratified by it as well by the and through its officers, directors, and/or managing agents.

135. Pursuant to Government Code §12965(b), Plaintiffs are entitled to recover Plaintiff's reasonable attorneys' fees and costs, including expert fees pursuant to the FEHA.

**FIFTH CAUSE OF ACTION**

FAILURE TO PREVENT DISCRIMINATION, HARASSMENT AND RETALIATION

IN VIOLATION OF FEHA

(California Government Code §12940(k))

(Against WalkMe)

136. Plaintiffs repeat and reallege all of the allegations set forth in the preceding paragraphs as if the same were fully set forth herein and with the same full force and effect

137. At all times hereto, the FEHA, including Government Code§ 12940(k), was in full force and effect and was binding upon Defendants. This subsection imposes a duty on WalkMe to take all reasonable steps necessary to prevent the discrimination, harassment, and retaliation alleged herein from occurring. WalkMe's duty to prevent harassment and discrimination is affirmative and mandatory. *Northrop Grumman Corp. v. Workers' Comp. Appeals Bd.*, (2002) 103 Cal.App.4th 1021, 1035.

138. As alleged above, WalkMe violated Government Code§ 12940(k) and breached their duty by failing to take all reasonable steps necessary to prevent discrimination, harassment, and retaliation from occurring.

139. FEHA is not preempted by the Workers' Compensation Act. *City of Moorpark v.*

COMPLAINT

*Superior Court* (1998) 18 Cal.4th 1143, 1156.

140.    The above said acts of WalkMe constitute violations of the FEHA and were a proximate cause in Plaintiffs' damage as stated below.

141.    As a direct and proximate result of WalkMe's failure to prevent discrimination, harassment and retaliation, Plaintiffs have suffered, and continue to suffer, substantial damages including, but not limited to, back wages, future wages, lost benefits, severe emotional distress, and other pecuniary and non-pecuniary losses in an amount to be proven at trial.

142.    As a further direct and proximate result of WalkMe's conduct, Plaintiffs have suffered loss of financial stability, peace of mind and future security, and have suffered embarrassment, humiliation, severe mental and emotional pain and distress and discomfort, all to Plaintiffs' detriment and damage in amount not fully ascertained but with the jurisdiction of this court and subject to proof at the time of trial.

143.    Plaintiffs are informed and believe, and thereon allege that the employees, officers, directors, and/or managing agents of WalkMe acted intentionally with malice and oppression, as their unlawful acts were carried out with full knowledge of the extreme risk of injury, involved, and with willful and conscious disregard for Plaintiffs' rights.  They also acted fraudulently, as they willfully concealed the fact that Plaintiffs' employment rights were being violated, with the intent to deprive Plaintiffs of employment benefits.  Accordingly, an award of punitive damages is warranted in an amount to be determined at the time of trial.

144.    Plaintiffs are informed and believe and thereon allege that the actions of WalkMe's employees, officers, directors, and/or managing agents were undertaken with the prior approval, consent, and authorization of WalkMe and were subsequently authorized and ratified by it as well by the and through its officers, directors, and/or managing agents.

145.    Pursuant to Government Code §12965(b), Plaintiffs are also entitled to recover Plaintiffs' reasonable attorneys' fees and costs, including expert fees pursuant to the FEHA.

///

///

///

- 25 -
COMPLAINT

## SIXTH CAUSE OF ACTION

INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

(Against All Defendants)

146.    Plaintiffs repeat and reallege all of the allegations set forth in the preceding paragraphs as if the same were fully set forth herein and with the same full force and effect.

147.    Specifically, intentional and negligent infliction of emotional distress claims based on alleged discriminatory retaliation are not preempted by California's Workers' Compensation Act. *Maynard v. City of San Jose*, 37 F.3d 1396, 1405 (9th Cir. 1994); *see also Fermino v. Fedco, Inc.*, 7 Cal. 4th 701, 708-15 (1994).

148.    Causes of action for emotional and psychological damage are not barred by the WCA if the distress was "engendered by an employer's illegal discriminatory practices." *See Accardi v. Superior Court*, 17 Cal. App. 4th 341, 352 (2d Dist. 1993), disapproved of on other grounds by *Richards v. CH2M Hill, Inc.*, 26 Cal. 4th 798 (2001).

149.    Here, Plaintiffs' injuries were due to Defendants' discriminatory motives and practices as alleged herein above.

150.    Additionally, the conduct complained of hereinabove was intentional and malicious and done for the purpose of causing Plaintiffs to suffer humiliation, mental anguish, and emotional and physical distress.  Defendants, and each of their conduct, in confirming and ratifying the complained of conduct, was done with the knowledge that Plaintiffs' emotional and physical distress would thereby increase and was done with a wanton and reckless disregard of the consequences to Plaintiffs.

151.    As a proximate result of Defendants' and each of their, intentional infliction of emotional distress as hereinabove alleged, Plaintiffs have been harmed in that Plaintiffs have suffered humiliation, mental anguish, and emotional and physical distress, and have been injured in mind and health.  As a result of said distress and consequential harm, Plaintiffs have suffered such damages in an amount in accordance with proof at the time of trial.

152.    Defendants, and each of them, engaging in the conduct hereinabove alleged, acted fraudulently, maliciously, oppressively and with reckless disregard of Plaintiffs' rights and safety,

COMPLAINT

and thereby entitling Plaintiffs to an award of punitive damages.  Defendants, and each of them, authorized, ratified, knew of the wrongful conduct complained of herein, but failed to take immediate and appropriate corrective action to remedy the situation and thereby acted fraudulently, maliciously, oppressively and with reckless disregard of Plaintiffs' rights and safety, and thereby entitling Plaintiffs to an award of punitive damages.

### SEVENTH CAUSE OF ACTION

NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

(Against All Defendants)

153.    Plaintiffs repeat and reallege all of the allegations set forth in the preceding paragraphs as if the same were fully set forth herein and with the same full force and effect.

154.    In the alternative, if said conduct of Defendants, and each of them, and of their agents and employees was not intentional, it was negligent, and Plaintiffs are thereby entitled to general damages for negligent infliction of emotional distress.

155.    As alleged herein above, Defendants had a duty to Plaintiffs to not discriminate or harass Plaintiffs on the basis of sex, age, or gender as well as a duty to provide Plaintiffs with a workplace free of such discrimination, harassment, and retaliation.  Defendants breached that duty causing Plaintiffs humiliation, mental anguish, and emotional and physical distress.  As a result of said distress and consequential harm, Plaintiffs have suffered such damages in an amount in accordance with proof at the time of trial.

### EIGHTH CAUSE OF ACTION

WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY

(Against WalkMe)

156.    Plaintiffs repeat and reallege all of the allegations set forth in the preceding paragraphs as if the same were fully set forth herein and with the same full force and effect.

157.    At all times relevant to this action, Plaintiffs were employed by WalkMe.

158.    At all times relevant to this action, Title VII, the ADEA, and FEHA were in full force and effect and was binding upon WalkMe.  FEHA, Title VII, and the ADEA prohibits Defendants from discriminating, harassing, or retaliating against an employee because of their protected

- 27 -
COMPLAINT

characteristics, such as sex, gender, and age.

159.    The foregoing statutes evince policies that benefit society at large, were well-established at the time of Plaintiffs' discharge, and are substantial and fundamental.

160.    WalkMe illegally terminated Plaintiffs from Plaintiffs' employment because of Plaintiffs' protected characteristics (e.g., their sex, gender, and age), and for engaging in protected activity in violation of the expressed federal public policies, including, but not limited to, FEHA, Title VII, and the ADEA.

161.    As a direct and proximate result, Plaintiffs have suffered, and continue to suffer, substantial damages including, but not limited to, back wages, future wages, lost benefits, severe emotional distress, and other pecuniary and non-pecuniary losses in an amount to be proven at trial.

162.    As a further direct and proximate result of WalkMe's conduct, Plaintiffs have suffered loss of financial stability, peace of mind and future security, and have suffered embarrassment, humiliation, severe mental and emotional pain and distress and discomfort, all to Plaintiffs' detriment and damage in amount not fully ascertained but with the jurisdiction of this court and subject to proof at the time of trial.

163.    Plaintiffs are informed and believe, and thereon allege that the employees, officers, directors, and/or managing agents of WalkMe acted intentionally with malice and oppression, as their unlawful acts were carried out with full knowledge of the extreme risk of injury, involved, and with willful and conscious disregard for Plaintiffs' rights.  They also acted fraudulently, as they willfully concealed the fact that Plaintiffs' employment rights were being violated, with the intent to deprive Plaintiffs of employment benefits.  Accordingly, an award of punitive damages is warranted in an amount to be determined at the time of trial.

164.    Plaintiffs are informed and believe and thereon allege that the actions of WalkMe's employees, officers, directors, and/or managing agents were undertaken with the prior approval, consent, and authorization of WalkMe and were subsequently authorized and ratified by it as well by the and through its officers, directors, and/or managing agents.

///

///

**NINETH CAUSE OF ACTION**

**BREACH OF CONTRACT**

(Against WalkMe)

165.    Plaintiffs repeat and reallege all of the allegations set forth in the preceding paragraphs as if the same were fully set forth herein and with the same full force and effect.

166.    Plaintiffs and WalkMe entered into a written agreement where WalkMe promised to pay Plaintiffs commissions at a certain amount and level in accordance with the terms and conditions of that commission plan in exchange for Plaintiffs working for WalkMe.

167.    WalkMe is in possession of Plaintiffs' commissions agreement and have not provided Plaintiffs with a copy of such agreement that was executed by the parties.

168.    Plaintiffs performed all covenants and conditions required of them under their commission agreement, except to the extent that Plaintiffs have been excused from having to perform any such covenants and conditions.

169.    As alleged herein above, WalkMe has failed to fully provide Plaintiffs with their commissions owed to them under the commission plan and have continually refused and ignored Plaintiffs overtures for WalkMe to pay such commissions owed to them, which still have not been paid to date.

170.    As a direct and proximate cause of WalkMe's breach of the foregoing agreement, Plaintiffs have suffered damages in an amount to be proven at trial.

171.    As a direct and proximate cause of WalkMe's breach of the foregoing agreements, Plaintiffs seek compensation for all detriment proximately caused thereby, or which, in the ordinary course of things, would be likely to result therefore, including, but not limited to, severe emotional distress, interest, lost benefits, and other benefits, in an amount according to proof at the time of trial.

172.    Plaintiffs have suffered special damages in the form of lost value, benefits, and/or other prospective damages in an amount according to proof at the time of travel.

173.    As a further direct and proximate result of WalkMe's conduct, Plaintiffs have suffered loss of financial stability, peace of mind and future security, and has suffered embarrassment, humiliation, severe mental and emotional pain and distress and discomfort, all to his detriment and

damage in amount not fully ascertained but with the jurisdiction of this court and subject to proof at the time of trial.

174. WalkMe has committed the acts alleged herein oppressively and maliciously, with the wrongful intention of injuring Plaintiffs, from an evil and improper motive amounting to malice, and in conscious disregard of Plaintiffs' rights. Thus, an award of punitive damages is warranted in an amount to be determined at the time of trial.

175. Plaintiffs are informed and believes and thereon alleges that the actions of WalkMe's employees, officers, directors, and/or managing agents were undertaken with the prior approval, consent, and authorization of WalkMe and were subsequently authorized and ratified by it as well by the and through its officers, directors, and/or managing agents.

### TENTH CAUSE OF ACTION

### PROMISSORY ESTOPPEL

(Against WalkMe)

176. Plaintiffs repeat and reallege all of the allegations set forth in the preceding paragraphs as if the same were fully set forth herein and with the same full force and effect.

177. As articulated and previously alleged in this Complaint, WalkMe made multiple clear and unambiguous promises to Plaintiffs regarding the payment of their commissions for work that they performed.

178. However, WalkMe did not perform the foregoing promises.

179. WalkMe made the foregoing false promises to Plaintiffs despite knowing that WalkMe would never perform on such promises.

180. WalkMe intended that Plaintiffs rely on its false promises and Plaintiffs did rely on WalkMe's promises as Plaintiffs performed work and made sales based on WalkMe's promises to pay commissions as well as continued with their employment based on such promises.

181. Plaintiffs reasonably and justifiably relied on WalkMe's false promises and such false promises substantially influenced Plaintiff's actions.

182. Injustice can only be avoided by the enforcement of WalkMe's promises articulated and previously alleged in this Complaint.

COMPLAINT

183. As a direct and proximate result, Plaintiffs have suffered, and continue to suffer, substantial damages including, but not limited to, lost benefits, severe emotional distress, and other pecuniary and non-pecuniary losses in an amount to be proven at trial.

184. As a further direct and proximate result of WalkMe's conduct, Plaintiffs have suffered loss of financial stability, peace of mind and future security, and has suffered embarrassment, humiliation, severe mental and emotional pain and distress and discomfort, all to their detriment and damage in amount not fully ascertained but with the jurisdiction of this court and subject to proof at the time of trial.

185. Plaintiffs are informed and believe and thereon allege that the actions of WalkMe's employees, officers, directors, and/or managing agents were undertaken with the prior approval, consent, and authorization of WalkMe and were subsequently authorized and ratified by it as well by the and through its officers, directors, and/or managing agents.

186. WalkMe committed the acts alleged herein oppressively and maliciously, with the wrongful intention of injuring Plaintiffs, from an evil and improper motive amounting to malice, and in conscious disregard of Plaintiffs' rights.  Thus, an award of punitive damages is warranted in an amount to be determined at the time of trial

## ELEVENTH CAUSE OF ACTION

UNLAWFUL BUSINESS PRACTICES

(California Business and Professions Code §17200)

(Against WalkMe)

187. Plaintiffs repeat and reallege all of the allegations set forth in the preceding paragraphs as if the same were fully set forth herein and with the same full force and effect.

188. Plaintiffs are informed, believe, and based thereon allege, that the practices alleged herein constitute an unlawful, unfair, and/or fraudulent business practice, as set forth in Business & Professions Code §17200, *et. seq*.

189. Plaintiffs are informed, believe, and based thereon allege, that the practices alleged herein present a continuing threat to members of the public as WalkMe conducted and continues to conduct business activities while failing to comply with the legal mandates cited herein.

COMPLAINT

190. Furthermore, such skirting of the legal mandates cited herein presents a threat to the general public in that the enforcement of such laws is essential to ensure that all California employers compete equally, and that no California employer receives an unfair competitive advantage at the expense of its employees.

191. WalkMe has clearly established a policy of accepting a certain amount of collateral damage, as represented by the damages to Plaintiffs herein alleged, as incidental to its business operations, rather than accept the alternative costs of full compliance with fair, lawful, and honest business practices, ordinarily borne by its responsible competitors and as set forth in legislation and the judicial record.

192. As a result of WalkMe's conduct, Plaintiffs have suffered damages, in an amount to be determined according to proof at trial.

193. As a further result of WalkMe's unlawful and unfair business practices, Plaintiffs are entitled and do seek restitution, and other appropriate relief available under Business and Professions Code §§17200 and 17203.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs seek judgment against Defendant in an amount according to proof, as follows:

1. For an order finding in favor of Plaintiffs on all counts asserted herein;

2. An order declaring that WalkMe has engaged in discrimination in violation of Title VII of the Civil Rights Act, Age Discrimination in Employment Act, and the California Fair Employment and Housing Act;

3. An order declaring that WalkMe has failed to prevent discrimination and/or harassment in violation of the California Fair Employment and Housing Act;

4. An order declaring that WalkMe terminated Plaintiffs in violation of public policy;

5. An order declaring that Defendants have engaged in harassment in violation of the California Fair Employment and Housing Act;

6. For an order declaring that Defendant's conduct violated all other statutes and laws

COMPLAINT

referenced herein above;

7.    For preliminary and permanent injunctions enjoining and restraining WalkMe from continuing the unfair and unlawful business practices set for above, and the requiring the establishment of appropriate and effective policies, procedures, and practices in place to prevent future violations of the aforementioned laws;

8.    For an order providing for the disgorgement of illegally acquired profits by WalkMe during the period starting four years before the filing of the Complaint through the present pursuant to Business & Professions Code §17200, *et. seq*.;

9.    For an order awarding make-whole compensatory and equitable relief for Plaintiffs' past and future economic damages resulting from the unlawful practices, acts, and omissions, complained of above, including front pay (including benefits) in lieu of reinstatement to restore Plaintiffs to their rightful position, in amounts according to proof;

10.    For an order awarding Plaintiffs for their past and future loss of wages and benefits, plus interest, in amounts according to proof;

11.    For an order awarding Plaintiffs compensation for their emotional pain, distress, suffering, inconvenience, and humiliation, in amounts according to proof

12.    For an order awarding Plaintiffs punitive damages for Defendants' malicious, oppressive and/or reckless conduct, as described above, in amounts to be determined at trial sufficient to punish, penalize and/or deter Defendants;

13.    For an order awarding Plaintiffs all costs and reasonable attorneys' fees incurred in connection with this action;

14.    For an order awarding Plaintiffs liquidated damages incurred in connection with this action;

15.    For an order awarding Plaintiffs all general, compensatory, special, and consequential damages according to proof as well as all equitable relief;

16.    For an order requiring WalkMe to provide other affirmative, equitable and injunctive relief necessary to eradicate the effects of its unlawful employment practices;

- 33 -

COMPLAINT

17.   Continuing jurisdiction over this action to monitor WalkMe's compliance with this Court's orders;

18.   Pre-judgment and post-judgment interest, as provided by law;

19.   For such other and further relief as this Court may deem necessary, just, and proper.

DATED:  November 20, 2024          Respectfully submitted,

**VALLES LAW, P.C.**

By: _____

Daniel Valles
Kayla Rathjen

Attorneys for Plaintiffs
JULIE WORKINGER AND JANELLE HILES

## DEMAND FOR JURY TRIAL

Plaintiffs Julie Workinger and Janelle Hiles hereby demand a jury trial on all issues so triable.

DATED:  November 20, 2024          Respectfully submitted,

**VALLES LAW, P.C.**

By: _____

Daniel Valles
Kayla Rathjen

Attorneys for Plaintiffs
JULIE WORKINGER AND JANELLE HILES

- 34 -
COMPLAINT