Daniel Valles (SBN 269137)
dan@valles.law
Kayla M. Rathjen (SBN 330046)
kayla@valles.law
Chase Laurent (SBN 355822)
chase@valles.law
**VALLES LAW, P.C**
1230 Rosecrans Avenue, Suite 300
Manhattan Beach, CA 90266
Telephone:    (415) 234-0065
Facsimile:    (510) 369-2075


Attorneys for Plaintiff
JULIE WORKINGER AND JANELLE HILES

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JANELLE HILES and JULIE WORKINGER; | Case No.  3:24-cv-8186-SK |
| Plaintiffs, | |
| v. | **PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR SANCTIONS UNDER FEDERAL RULE OF CIVIL PROCEDURE 37(e); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT** |
| WALKME, INC. and JAMES STEVEN SPARKS; | |
| Defendants. | Hearing Date:  August 3, 2026<br>Time:            9:30 a.m. |

- 1 -

### NOTICE OF MOTION

PLEASE TAKE NOTICE that Plaintiffs JANELLE HILES and JULIE WORKINGER (collectively, "**Plaintiffs**"), through their attorneys, will move this Court pursuant to Federal Rule of Civil Procedure 37(e), before the Honorable Magistrate Judge Sallie Kim, United States District Court for the Northern District of California, at the United States District Courthouse, located at 450 Golden Gate Avenue, San Francisco, CA 94102-3489 on Monday, August 3, 2026 at 9:30 a.m. or as soon thereafter as the matter may be heard, for an Order imposing sanctions against Defendant Walkme, Inc. ("**Defendant**" or "**WalkMe**") and for other and further relief as the Court deems just and proper.

In support, Plaintiffs submit Plaintiffs' Memorandum of Law, which is incorporated below, the Declaration of Daniel Valles ("**Valles Decl.**"), the Declaration of Julie Workinger ("**Workinger Decl.**"), and the Declaration of Janelle Hiles ("**Hiles Decl.**")

DATED:  June 23, 2026                     Respectfully submitted,

**VALLES LAW, P.C.**



By: _____
Daniel Valles
Kayla M. Rathjen
Chase Laurent

Attorneys for Plaintiff
JULIE WORKINGER AND JANELLE HILES

- 2 -

## TABLE OF CONTENTS

I.    INTRODUCTION ...................................................................................................... 5

II.   FACTUAL BACKGROUND ...................................................................................... 8

    A.    WALKME RECEIVES NOTICE OF ANTICIPATED LITIGATION AND PRESERVATION DEMANDS ... 8

    B.    WALKME'S RECENT DISCLOSURES REVEAL SIGNIFICANT INCONSISTENCIES CONCERNING THE STATUS OF CRITICAL EMAIL REPOSITORIES .................................................................. 9

    C.    WALKME ADMITS IT FAILED TO PRESERVE PLAINTIFFS' COMPANY-ISSUED LAPTOPS .......... 12

    D.    WALKME FAILED TO DISCLOSE THE DESTRUCTION OF THE MAILBOXES UNTIL AFTER CRITICAL DISCOVERY HAD OCCURRED ....................................................................... 13

III.  LEGAL ARGUMENT.............................................................................................. 13

    A.    RULE 37(E) AUTHORIZES SEVERE SANCTIONS FOR THE INTENTIONAL DESTRUCTION OF RELEVANT ESI .................................................................................................... 13

    B.    WALKME HAD A DUTY TO PRESERVE THE DESTROYED ESI.................................... 15

    C.    WALKME'S SHIFTING EXPLANATIONS SUPPORT A FINDING OF SPOLIATION ......................... 17

    D.    WALKME FAILED TO TAKE REASONABLE STEPS TO PRESERVE THE ESI .............................. 18

    E.    THE LOST ESI CANNOT BE RESTORED OR REPLACED............................................... 19

    F.    WALKME ACTED WITH THE INTENT TO DEPRIVE PLAINTIFFS OF THE USE OF THE LOST ESI 20

IV.   TERMINATING SANCTIONS ARE WARRANTED ...................................................... 23

V.    CONCLUSION ..................................................................................................... 26

PLAINTIFFS' MOTION FOR SANCTIONS

**TABLE OF AUTHORITIES**

<small>CASES</small>

*Apple Inc. v. Samsung Elecs. Co.*, 888 F. Supp. 2d 976, 989–91 (N.D. Cal. 2012)-------------- 14, 24

*DR Distribs., LLC v. 21 Century Smoking, Inc.*, 513 F. Supp. 3d 839, 978–80 (N.D. Ill. 2021)-----15

*Fast v. GoDaddy.com LLC*, 340 F.R.D. 326, 338–40 (D. Ariz. 2022)----------------------------------14

*GN Netcom, Inc. v. Plantronics, Inc.*, 930 F.3d 76, 82–83 (3d Cir. 2019) ----------------------------15

*In re Napster, Inc. Copyright Litig.*, 462 F. Supp. 2d 1060, 1068 (N.D. Cal. 2006)------------------14

*Leon v. IDX Sys. Corp.*, 464 F.3d 951, 958–61 (9th Cir. 2006)--------------------------------23, 25, 26

*Moody v. CSX Transp., Inc.*, 271 F. Supp. 3d 410, 431–32 (W.D.N.Y. 2017) ------------------------15

*Newberry v. County of San Bernardino*, 750 F. App'x 534, 537 (9th Cir. 2018) ------------14, 23, 26

*Paisley Park Enters., Inc. v. Boxill*, 330 F.R.D. 226, 236–38 (D. Minn. 2019) -----------------------15

*Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 218 (S.D.N.Y. 2003) -------------------------------14

<small>RULES</small>

Fed. R. Civ. P. 30(b)(6) ------------------------------------------------------------------------------------8, 13

Fed. R. Civ. P. 37(e) ------------------------------------------------------------------------------------- 14, 23

Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment ----------------------------- 14, 15

Fed. R. Civ. P. 37(e)(1)------------------------------------------------------------------------------------14

Fed. R. Civ. P. 37(e)(2)------------------------------------------------------------------------------- passim

Fed. R. Civ. P. 37(e)(2)(C)------------------------------------------------------------------------- 23, 26

PLAINTIFFS' MOTION FOR SANCTIONS

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.   INTRODUCTION

This motion presents an egregious case of Defendant's destruction of critical electronically stored information ("**ESI**") and other relevant information and documents after receiving explicit preservation demands and after its duty to preserve evidence had unquestionably arisen.

On August 30, 2023, Plaintiffs' counsel sent detailed letter demanding Defendant WalkMe, Inc. ("**WalkMe**") preserve specific evidence related to Plaintiff Julie Workinger ("**Workinger**"), including, but not limited to, Workinger's company laptop, email account, and slack account, as well as other specific categories of documents, information, and repositories belonging to other WalkMe employees (including, but not limited, Workinger's management chain, other sales employees and account executives, WalkMe's owners, supervisory employees, human resources department and legal departments, WalkMe's clients, vendors, partners, and insurance companies, and any and all employees who were a decision maker or had any input into any layoff or reduction in force conducted by WalkMe in the last five (5) years). (Valles Decl., ¶¶ 2-6, Ex. A.) The letter was sent by email specifically to WalkMe's Chief People Officer ("**CPO**"), General Counsel, and Chief Revenue Officer ("**CRO**") just 26 days after Workinger was terminated. (*Id.*) Receipt of the preservation letter and obligations by WalkMe was also expressly acknowledged by WalkMe's previous counsel, Chad D. Greeson of Littler Mendelson, P.C. (*Id.* at ¶ 7, Ex. B.)

WalkMe's receipt of the preservation demand is further confirmed by its own document production as WalkMe produced copies of the August 30, 2023, email transmitting the preservation demand to the CPO, General Counsel, and CRO, together with the attached preservation letter itself during discovery. (*Id.* at ¶ 8, Ex. C.) Thus, WalkMe's own records establish that the letter was received, maintained, and retained by WalkMe. Any suggestion otherwise is contradicted by WalkMe's own document production.

However, rather than comply with its obligations to preserve and retain information, WalkMe embarked upon a mission to destroy and bury all relevant information and documents that could prove or support Workinger's claims against Defendants.  What is particularly horrible about this situation is that Workinger's laptop contained critical information that proved her claims and, rather than resort

PLAINTIFFS' MOTION FOR SANCTIONS

to any self-help mechanisms to access her laptop to download the information, she complied with her obligations to not touch or access her laptop before returning it to WalkMe as she was expressly directed to do by WalkMe. (Workinger Decl., ¶¶ 3-7, 10.) However, because Workinger believed WalkMe would potentially destroy information, she deliberately waited until after WalkMe received the preservation letter on August 30, 2023, to return the laptop to ensure its preservation. (*Id.* at ¶¶ 7-8.) Workinger then relied on WalkMe's required compliance with its legal and ethical duties to retain the critical information and evidence that proved her harassment and discrimination claims against Defendants, including her sexual harassment claims. (*Id.* at ¶ 11.) However, WalkMe utterly disregarded its obligations and intentionally destroyed the very evidence that would prove Workinger's case.  As a result, Workinger has been punished for complying with her ethical and legal obligations to not engage in any self-help activities while WalkMe has been rewarded for completely and utterly disregarding its obligations.  In fact, WalkMe does not even hide the fact that it destroyed the laptop and information on it after it had already received Workinger's preservation letter.

It is not just Workinger that WalkMe did this too as it took the same tactics with Plaintiff Janelle Hiles ("**Hiles**") as well.  Just a few months later, on November 14, 2023, our office emailed a second identical preservation-of-evidence letter to WalkMe (specifically to the same individuals at the same email addresses) to preserve the exact same information related to Hiles as well. (Valles Decl., ¶¶ 9-10, Ex. D.) In fact, both Workinger's and Hiles' preservation letters specifically instructed WalkMe to preserve the exact same documents as the letters are identical except that one refers to Hiles and the other to Workinger. (*Id.* at ¶¶ 4-5, 10, Ex. A, D.)

However, after receiving both Hiles' and Workinger's preservation letters, WalkMe deliberately destroyed or failed to preserve information, documents, communications, and repositories critical to this case, including, but not limited to, Plaintiffs, Defendant James Sparks ("**Sparks**"), Alfred Wong ("**Wong**"), and Sean Diskin ("**Diskin**"), as well as countless other individuals that Plaintiffs cannot identify because of the sheer scale of Defendant's destruction and actions. (*Id.* at ¶ 15.)

In fact, WalkMe openly admits that it **<u>never</u>** implemented, instituted or placed any litigation hold or exception to its document destruction policies on any email accounts, document repositories, or devices at issue here until well into 2024 despite receiving preservation demands on August 30, 2023,

PLAINTIFFS' MOTION FOR SANCTIONS

and November 14, 2023. (*Id.* at ¶ 16, Ex. G.) Instead, WalkMe just asserts that all of these documents, information, repositories and devices for these custodians are now "no longer accessible." (*Id.*)

WalkMe expects Plaintiff to live with the fact that WalkMe deleted or transitioned portions of the email accounts into a "cold storage" format (which WalkMe claims is difficult if not impossible to access or search), and that Plaintiffs' company-issued laptops were completely wiped by WalkMe without preserving any locally stored data or ESI. (*See id.* at ¶ 24, Ex. J.) Additionally, for the small portion of email data that may still exist within cold storage repositories, WalkMe claims such repositories are almost impossible to accurately or completely search. (*See id.*) These are not mere allegations or assertions by Plaintiff, but specific admissions by WalkMe that clearly establish not only a failure to take reasonable preservation measures but the destruction of relevant ESI after WalkMe's duty to preserve had unquestionably arisen. (*See id.* at Ex. G and J.)

The destroyed e-mail and document repositories and laptops belong to the very individuals and witnesses whose communications and documents are central to Plaintiffs' claims for discrimination, harassment, retaliation, and wrongful termination. The lost ESI, including email repositories, metadata, locally stored laptop files, downloaded documents, drafts, browser artifacts, and other electronically stored information, contained evidence regarding Plaintiffs' complaints, performance evaluations, reduction-in-force discussions, internal decision-making processes, comparator evidence, and communications among decisionmakers regarding Plaintiffs and other employees. Even worse, Workinger's laptop contained documents and information that would prove her claims against WalkMe for harassment and discrimination and completely eviscerate Defendants' asserted defenses in this matter. (Workinger Decl., ¶¶ 3-7.)

It is clear from WalkMe's own admissions that, despite receiving and acknowledging the receipt of explicit evidence preservation demands, WalkMe intentionally destroyed and failed to preserve key evidence in this matter in order to prevent Plaintiffs from being able to prove their allegations against Defendants and for the express benefit of Defendants. WalkMe admits that it possessed mechanisms for preserving Plaintiff's and former employee mailboxes, laptops, etc., but, nevertheless, deliberately and intentionally failed to implement those preservation measures and destroyed the precise evidence identified in Plaintiffs' preservation demands. (*See* Valles Decl., ¶ 16,

PLAINTIFFS' MOTION FOR SANCTIONS

Ex. G.) WalkMe then failed to disclose the destruction of those repositories until after substantial discovery had already occurred, including the Fed. R. Civ. P. 30(b)(6) deposition. (*Id.* at ¶¶ 17-20*; see also* Ex. G.)

Because WalkMe intentionally failed to preserve ESI it was required to preserve, because the ESI is irretrievably lost, and because WalkMe acted with intent to deprive Plaintiffs of the use of that evidence in this litigation, sanctions are warranted under Fed. R. Civ. P. 37(e)(2).

## II.    FACTUAL BACKGROUND

### A.    WalkMe Receives Notice Of Anticipated Litigation And Preservation Demands

Workinger's employment was terminated on August 4, 2023. Just three weeks later, on August 30, 2023, our office transmitted a letter demanding WalkMe preserve Workinger's laptop and specific categories of evidence (as well as specific custodians) via email to WalkMe's CPO, Chelsea Pyrzenski ("**Pyrzenski**"), General Counsel Paul Shinn ("**Shinn**"), and CRO Scott Little ("**Little**"). (Valles Decl., ¶ 2, Ex. A.)  WalkMe's previous counsel, Chad D. Greeson of Littler Mendelson, P.C., also sent our office a letter acknowledging that Workinger's preservation letter was previously received by WalkMe. (*Id.* at ¶ 7, Ex. B.)  On November 14, 2023, our office sent a <u>second</u> identical formal preservation-of-evidence demand on the behalf of Hiles via email to the same individuals that Workinger's preservation letter was sent to and at the same email addresses. (*Id.* at ¶ 9, Ex. D.) Both preservation letters expressly advised WalkMe that it was under a legal duty to preserve Plaintiff's laptops and all potentially relevant evidence and warned that destruction of such evidence could constitute spoliation. (*Id.* at ¶ 10.)

Both Workinger's and Hiles' preservation letters specifically instructed WalkMe to preserve all documents and communications concerning Plaintiffs, all documents and communications authored by or sent to Plaintiffs, all documents relating to complaints, investigations, discrimination, retaliation, layoffs, performance, compensation, and personnel decisions, and specifically demanded preservation of:

> "The complete e-mail files and records (including inbox, sent, junk, deleted and other folders) as well as computer history ... for [Plaintiffs] and every other sales employee ... as well as all of [Plaintiffs'] managers (and all employees in her chain of management) and any and all employees who were a decision maker or had any input into any layoff or reduction in force conducted by WalkMe in the last five (5) years."

PLAINTIFFS' MOTION FOR SANCTIONS

(*Id.* at Ex. A and D.)

Both preservation letters also contained specific instructions to preserve both Workinger's and Hiles' laptops. Specifically, Workinger's letter stated: "*we understand that Workinger's company laptop has been returned to WalkMe and that the laptop contains specific relevant evidence for this case. **As such, WalkMe is hereby instructed to immediately retain Workinger's laptop in its original state, including all files and information**. (emphasis added)" (*Id.* at Ex. A.)  Hiles' preservation letter contained the exact same wording except that Hiles name was included in place of Workinger's name. (*Id.* at Ex. D.)

As a result, as of August 30, 2023, for Workinger, and November 14, 2023, for Hiles, WalkMe had actual notice of anticipated litigation and actual notice that laptops, information, documents, and the email repositories at issue were required to be preserved.

Moreover, because Workinger was afraid that WalkMe would destroy key evidence contained on her laptop that was dispositive of her harassment and discrimination claims against both WalkMe and Defendant Sparks, Workinger intentionally refrained from returning her laptop to WalkMe until after our preservation letter was delivered on August 30, 2023. (Workinger Decl., ¶¶ 7-8.) As a result, WalkMe was under specific instruction to preserve Workinger's laptop before it had even received the laptop back from Workinger, yet WalkMe still destroyed wiped the laptop claim and destroyed all of the information contained on it anyway.

**B.    WalkMe's Recent Disclosures Reveal Significant Inconsistencies Concerning The Status Of Critical Email Repositories**

During discovery, Plaintiffs served requests for production seeking, among other things, documents and communications concerning their employment, performance, complaints, investigations, compensation, layoffs, reductions in force, and termination decisions as well as those concerning that of other comparative sales executives. (Valles Decl., ¶ 12, Ex. E.) Plaintiffs also sought communications from key decisionmakers, and custodians involved in the events underlying Plaintiffs' claims. Plaintiffs further requested documents and information that was specifically contained on their laptops, including files that were critical to their prosecution of their claims in this matter as well as documents, communications, and information on Workinger's laptop that proved

the sexual harassment and discrimination she had endured at the hands of Defendants. Despite the central and critical importance of these communications, information, and documents, WalkMe only produced approximately 24 pages of relevant communications from key custodians.[1] (*Id.* at ¶ 14.)

As a result, Plaintiffs sought an explanation for the clear absence of responsive communications, documents and information from Plaintiffs' email accounts, slack accounts, and laptops as well as those of several other central custodians. (*Id.* at ¶ 15.) In response, WalkMe stated that the email data for custodians, such as Hiles, Workinger, Sparks, Wong, and Diskin was "no longer accessible." Specifically, WalkMe stated:

> "Prior to 2024, WalkMe's retention policy was to not retain the email boxes for former employees unless there was a hold or exception placed on such email data which did not occur in this matter given that WalkMe was unaware of any need to maintain such data until Plaintiffs filed suit in late 2024. Thus, the email data for Hiles, Workinger, Sparks, Alfred Wong, and Sean Diskin is no longer accessible to WalkMe."

(*Id.* at ¶ 16, Ex. G.)

After being called out for that explanation, WalkMe shifted its narrative. Now, for the first time, WalkMe asserts, through the Declaration of David Higuera, that Plaintiff's email accounts were not necessarily completely deleted but instead were _likely_ partially transferred into a "cold storage" environment approximately thirty (30) days after separation from employment. (*Id.* at ¶ 24, Ex. J.)

This is despite the fact that WalkMe already admitted that it received a preservation of evidence letter for Workinger at least a week prior to this alleged 30-day clock expired that identified Workinger and several other custodians to retain, which WalkMe also admits would have trigged its requirement not to undertake this action. (*Id.* at Ex. G.) According to Higuera, these repositories

---

[1] The overwhelming majority of Defendants' production consisted of generic HR and administrative records, including approximately 673 pages of benefits documentation, 282 pages of employee handbooks, 187 pages of organizational charts, 159 pages relating to investigations of other employees' complaints, 129 pages relating to a completely unrelated litigation, 108 pages of EPLI materials, 91 pages of PIPs concerning other employees, and hundreds of additional pages of termination paperwork, commission summaries, sales reports, customer-related documents, and other miscellaneous business records. By contrast, Defendants produced only a handful of actual custodial communications involving key decisionmakers, including only **9 pages of emails** involving Plaintiffs (in addition, there was a series of emails involving Workinger concerning one single commission dispute), **9 pages of emails** involving Defendant Sparks, **2 pages of emails** from Sarah Cahill, and **4 pages of of Slack messages from Cahill**. That's it. The limited production is particularly significant given Defendants' admission that the email accounts of numerous key custodians, including Plaintiffs, Sparks, Alfred Wong, and Sean Diskin, were not preserved and are no longer accessible. Thus, while Defendants produced thousands of pages of peripheral business records, they failed to preserve and produce the category of evidence most likely to reveal the contemporaneous communications and decision-making underlying Plaintiffs' claims. (Valles Decl., ¶ 14.)

PLAINTIFFS' MOTION FOR SANCTIONS

remain in a pooled format consisting of raw data that is difficult to access and search. (*Id.* at Ex. J.)

WalkMe's explanation is further undermined by its own discovery conduct in this litigation. During the deposition of Kyla Gundersen (a former employee), WalkMe utilized and produced an email authored by Oren Garonzik from his WalkMe email account. (*Id.* at ¶ 26, Ex. K.) However, Garonzik's employment ended on in August of 2022, yet this communication was nevertheless available to WalkMe and produced years after his departure. (*Id.* at ¶ 27, Ex. L) Thus, notwithstanding WalkMe's assertion that former employee email repositories were transitioned out of active systems approximately 30 days after separation and allegedly became difficult or impossible to access prior to 2024, WalkMe plainly possessed the ability to quickly retrieve and produce emails belonging to other former employees long after their employment ended. This raises further doubts regarding the veracity of WalkMe's representations concerning the accessibility of former employee email repositories, the scope of information that remains available within its systems, and whether additional repositories belonging to Plaintiffs and other key custodians could have been preserved, searched, or produced had WalkMe complied with its preservation obligations.

Moreover, despite previously asserting it could not search any previous accounts for Workinger's or Hiles' email data, WalkMe now contends it specifically searched the cold-storage data, but only for Hiles and Workinger emails. (*See id.* at ¶¶ 24-25, Ex. J.) The assertion along with the Higuera Declaration raises substantial questions regarding the accuracy of WalkMe's discovery representations during this entire litigation, the scope of information maintained within cold storage, the search methodologies employed, the existence and preservation of metadata, the completeness of any searches conducted or whether any search actually even occurred, and whether responsive ESI remains unavailable despite purported retention in raw-data form.

Also, notably absent from Higuera's declaration is any explanation regarding the status of the email accounts belonging to Sparks, Wong, Diskin, and the other custodians identified in Workinger's and Hiles' evidence preservation letters. (*See id.* at Ex. J.) However, we suspect it was omitted because WalkMe has already stated that those repositories were not preserved in any manner nor are they recoverable and any responsive information contained therein has been destroyed. (*See id.* at Ex. G.)

PLAINTIFFS' MOTION FOR SANCTIONS

WalkMe's blatant assertion that all of this information is "no longer accessible" contrasted with its current assertion that at least some of Hiles' and Workinger's information was maintained in cold storage (but not all relevant or requested information) only further underscores their intent to hide critical information and any future assertions by WalkMe regarding this information should come under intense scrutiny, especially regarding WalkMe's preservation efforts, the completeness of its searches, and the extent of any spoliation that has occurred. (*See id.* at ¶¶ 16, 24-25, Ex. G and J.)

**C.    WalkMe Admits It Failed To Preserve Plaintiffs' Company-Issued Laptops**

On June 15, 2026, WalkMe disclosed, for the first time, that it failed to preserve the company-issued laptops used by Plaintiffs during their employment. (Valles Decl., ¶ 16, Ex. G.) Rather WalkMe completely wiped the devices. (*Id.*) In fact, WalkMe admits no data from Plaintiffs' laptops or devices was saved or preserved in any manner and that such data was, instead, deleted because WalkMe intentionally did not place a legal hold on any such devices. (*Id.*)

This admission is significant as WalkMe had already received Workinger's preservation demand on August 30, 2023, and did not receive Workinger's laptop back until after WalkMe received her preservation letter that specifically demanded the preservation of her laptop. (*See id.* at ¶ 2, Ex. A; Workinger Decl. ¶ 8.) However, despite receiving a litigation hold notice triggering its obligation to preserve Workinger's laptop, WalkMe wiped her device without preserving any of its contents.

The destruction of locally stored ESI is particularly significant for Workinger as her laptop expressly contained information that was dispositive of her claims of discrimination and harassment that are now lost forever. (Workinger Decl., ¶¶ 3-7.) None of this information exists within a centralized email repository anywhere as these were files and specific records kept by Workinger on her laptop as well as her contemporaneous notes and journals as well as documents related to her quotes, contracts sold, and commissions earned that proved her allegations as well. (*Id.*) And which clearly do not exist anywhere else as WalkMe has been unable to provide any of this documentation claiming it does not exist or that they no longer have it. (Valles Decl., Ex. G and J.)

In addition to Workinger's laptop, WalkMe also wiped Hiles' laptop as well despite receiving a litigation hold letter on November 14, 2023, informing WalkMe to retain it as well. (*Id.* at Ex. D, G, and J.) Hiles' laptop also contained downloaded documents, locally stored spreadsheets, drafts, notes,

PLAINTIFFS' MOTION FOR SANCTIONS

browser data, temporary files, locally synchronized cloud content, cached communications, and other information that also does not exist within centralized email repositories. (Hiles Decl., ¶ 3.)

By wiping Plaintiffs' devices after, WalkMe intentionally destroyed critical evidence that cannot now be recovered or searched.

**D.  WalkMe Failed To Disclose The Destruction Of The Mailboxes Until After Critical Discovery Had Occurred**

WalkMe did not disclose the destruction or inaccessibility of email repositories or that Plaintiffs' company laptops had been wiped when responding to written discovery, during the parties' extensive meet-and-confer efforts, or before the 30(b)(6) deposition.[2] Rather, only after substantial discovery and the depositions had been completed did WalkMe reveal that the email repositories had been deleted or rendered inaccessible, and Plaintiffs' laptops had been completely wiped.[3] (*See id.* at ¶¶ 19-21, Ex. I.)

As a result, Plaintiffs were deprived of the ability to conduct any discovery or depose any of the witnesses regarding critical issues. Had WalkMe timely disclosed these facts, Plaintiffs would have questioned witnesses regarding the preservation failures at issue and pursued additional discovery while potentially relevant information remained available. WalkMe's delayed disclosure therefore compounded the prejudice caused by the underlying loss of ESI and deprived Plaintiffs of a meaningful opportunity to investigate the circumstances surrounding the spoliation.

**III.  LEGAL ARGUMENT**

**A.  Rule 37(e) Authorizes Severe Sanctions For The Intentional Destruction Of ESI**

Rule 37(e) applies where ESI that should have been preserved in anticipation of litigation is lost because a party failed to take reasonable steps to preserve it and the information cannot be restored or replaced through additional discovery. Fed. R. Civ. P. 37(e). The Rule was adopted to provide the

---

[2] Plaintiffs' 30(b)(6) notice specifically sought discovery concerning WalkMe's preservation efforts, retention practices, document collection procedures, and the searches performed for responsive ESI; however, WalkMe's designated witnesses were unable to provide any substantive testimony on any of these issues. (Valles Decl., ¶ 18, Ex. H.)

[3] These disclosures were not made through 30(b)(6) testimony or written discovery responses. (Valles Decl., ¶ 19; *see also* Valles Decl., ¶ 13, Ex. F.) Rather, they were revealed at the very end of the discovery window and only when pressed through extensive meet-and-confer correspondence.

PLAINTIFFS' MOTION FOR SANCTIONS

exclusive framework for addressing the loss of ESI and requires courts to evaluate: (1) whether the information should have been preserved in anticipation or conduct of litigation; (2) whether it was lost because a party failed to take reasonable steps to preserve it; (3) whether it can be restored or replaced through additional discovery; and (4) the appropriate remedy. *See* Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment.

A party's duty to preserve evidence arises when litigation is pending or reasonably foreseeable. *See In re Napster, Inc. Copyright Litig.*, 462 F. Supp. 2d 1060, 1068 (N.D. Cal. 2006) ("The future litigation must be 'probable,' which has been held to mean more than a possibility."); *Apple Inc. v. Samsung Elecs. Co.*, 888 F. Supp. 2d 976, 989–91 (N.D. Cal. 2012) (duty to preserve attaches when litigation becomes reasonably foreseeable). Once that duty attaches, a party must suspend routine document-destruction practices and implement reasonable preservation measures, including litigation holds and preservation of relevant custodial data. *See Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 218 (S.D.N.Y. 2003) ("Once a party reasonably anticipates litigation, it must suspend its routine document retention/destruction policy and put in place a 'litigation hold' to ensure the preservation of relevant documents."); *Apple*, 888 F. Supp. 2d at 991–92 (discussing the obligation to issue litigation holds and preserve relevant ESI). Courts within the Ninth Circuit repeatedly recognize that the failure to preserve relevant email repositories and other ESI after a preservation obligation has arisen warrants Rule 37(e) sanctions. *See Newberry v. County of San Bernardino*, 750 F. App'x 534, 537 (9th Cir. 2018) (affirming Rule 37(e) sanctions for failure to preserve ESI); *Fast v. GoDaddy.com LLC*, 340 F.R.D. 326, 338–40 (D. Ariz. 2022) (analyzing sanctions under Rule 37(e) for failure to preserve relevant ESI after the duty to preserve arose).

Rule 37(e) establishes a two-tiered remedial framework. Under 37(e)(1), where the loss of ESI causes prejudice to another party, the Court may order measures to cure the prejudice. However, where the Court finds that the spoliating party acted with the intent to deprive another party of the information's use in litigation, Fed. R. Civ. P. 37(e)(2) authorizes the most severe sanctions available. Specifically, the Court may presume the lost information was unfavorable to the spoliating party, instruct the jury that it may or must make such a presumption, dismiss the action, or enter default judgment. Fed. R. Civ. P. 37(e)(2).

The intent requirement may be established through circumstantial evidence and reasonable inferences drawn from the surrounding facts, including a party's knowledge of its preservation obligations, the importance of the destroyed evidence, the failure to implement litigation holds, and the continued destruction of evidence after receiving preservation demands. *See* Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment ("[…] an intent to deprive another party of the information's use in the litigation does not require a court to find that the party acted in bad faith. […] Courts may, however, infer from the circumstances that a party acted with the intent required under subdivision (e)(2)."); *GN Netcom, Inc. v. Plantronics, Inc.*, 930 F.3d 76, 82–83 (3d Cir. 2019) (affirming finding of intent based on circumstantial evidence where executive directed deletion of emails despite preservation obligations); *Moody v. CSX Transp., Inc.*, 271 F. Supp. 3d 410, 431–32 (W.D.N.Y. 2017) (intent may be inferred from circumstantial evidence and a party's conduct surrounding destruction of ESI). The Advisory Committee Notes expressly recognize that courts may infer intent from the circumstances surrounding the loss of information. Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment. Where a party knowingly permits the destruction of relevant ESI despite clear preservation obligations and the evidence cannot be restored or replaced, courts find that the severe sanctions authorized by Rule 37(e)(2) are appropriate. *See DR Distribs., LLC v. 21 Century Smoking, Inc.*, 513 F. Supp. 3d 839, 978–80 (N.D. Ill. 2021) (imposing Rule 37(e)(2) sanctions where party intentionally failed to preserve relevant ESI); *Paisley Park Enters., Inc. v. Boxill*, 330 F.R.D. 226, 236–38 (D. Minn. 2019) (finding intent to deprive and imposing Rule 37(e)(2) sanctions where defendants deleted relevant text messages after duty to preserve arose); *GN Netcom*, 930 F.3d at 83–84 (upholding severe sanctions based on intentional destruction of relevant emails notwithstanding preservation obligations).

**B.    WalkMe Had A Duty To Preserve The Destroyed ESI**

There can be no dispute that WalkMe's duty to preserve arose long before the destruction of the subject mailboxes and Plaintiff's laptops, especially Workinger's laptop that was not even returned to WalkMe until after WalkMe received a letter from our office demanding its specific preservation.

WalkMe received a preservation demands for Workinger on August 30, 2023, and for Hiles on November 14, 2023. (Valles Decl., ¶¶ 2, 9, Ex. A, D.) Those demands specifically identified the

PLAINTIFFS' MOTION FOR SANCTIONS

categories of ESI to be preserved and expressly instructed WalkMe to preserve their laptops as well as the complete email repositories of Plaintiffs, decisionmakers, and management personnel and other critical information. (*Id.*) The preservation notices were not vague or generalized requests. Rather, they specifically identified the precise categories of electronically stored information that WalkMe was required to preserve. For example, Workinger's August 2023 letter and Hiles November 2023 expressly instructed WalkMe to immediately preserve over 31 categories of information, which included, among other things, (i) Plaintiff's company laptops in their original state, including all files and information on the devices; (ii) all documents and communications relating to or mentioning Plaintiffs, including specifically, between or involving WalkMe's managers, supervisory employees, owners, co-workers, clients, vendors, partners, insurance companies, human resources, legal department, parent companies, subsidiaries, or affiliates; (iii) all documents authored by or sent to Plaintiffs; (iv) all documents contained in Plaintiffs' email and slack accounts; (v) all documents relating to Plaintiffs' complaints, investigations, performance, compensation, commissions, and termination; and (vi) all communications and documents concerning any reduction in force or layoff in the previous ten years. (*See id.*) The letters also required the retention of the complete slack communications, email files and records, including inboxes, sent items, deleted items, junk folders, and other folders, as well as browser history and computer history for Plaintiffs, all sales employees, all managers within Plaintiffs' reporting chains, and all employees who participated in or had input into any layoff or reduction in force in the previous five years. (*See id.*) These preservation demands specifically encompassed the very email repositories, devices, and electronically stored information that WalkMe now admits were either wiped or rendered inaccessible. (*See id.*)

The letters further identified at least some of the relevant custodians whose communications were likely to contain evidence concerning Plaintiffs' claims and WalkMe's defenses, including, but not limited to, WalkMe's other sales employee and account executive, Plaintiffs' managers (and all employees in their chain of management), WalkMe's human resources and legal departments, WalkMe's owners or supervisory employees, WalkMe's clients, vendors, partners, and insurance companies, and any and all employees who were a decision maker or had any input into any layoff or reduction in force conducted by WalkMe in the last five (5) years. (*See id.*)

PLAINTIFFS' MOTION FOR SANCTIONS

When those preservation letters were received, WalkMe knew or reasonably should have known that litigation was imminent. Indeed, the claims asserted in this action arise directly from the employment decisions involving Plaintiffs, and the communications and actions of Plaintiffs as well as Defendants, WalkMe's supervisory employees, relevant decisionmakers, human resources, other sales employees, and individuals within Plaintiffs' management chains. Once litigation became reasonably foreseeable, WalkMe was obligated to take reasonable steps to preserve relevant ESI, including implementing litigation holds and ensuring that routine deletion policies did not result in the destruction of relevant evidence.  However, WalkMe openly and brazenly admits it took no such actions until well into 2024 (and almost a year after receiving the preservation letters). (*See id.* at ¶ 16, Ex. G.)

The destroyed mailboxes, data, information, and laptops fall squarely within the scope of Plaintiffs' preservation demands. (*See id.* at Ex. A, D.) They belonged not only to the Plaintiffs themselves but also to key custodians whose communications are central to the issues in dispute. Emails, documents, and information maintained in those repositories contained discussions regarding Plaintiffs' employment, performance evaluations, management decisions, personnel actions, and the circumstances giving rise to their claims, including the sexual harassment experienced by Workinger and Hiles. In fact, Workinger's laptop contained specific evidence that was dispositive of her claims of harassment and discrimination against both WalkMe and Sparks. (Workinger Decl., ¶¶ 3-6.) As such, there can be no credible argument that the destroyed information, communications, repositories and laptops fell outside WalkMe's preservation obligations.

**C.    WalkMe's Shifting Explanations Support A Finding Of Spoliation**

WalkMe's recent disclosures do not resolve the spoliation issues. Rather, they create substantial new questions regarding the nature and extent of WalkMe's preservation efforts, the completeness of its searches, the accuracy of its prior discovery representations and the extent of their document and evidence destruction.

As noted above, WalkMe initially represented that the email data and communications for Hiles, Workinger, Sparks, Wong, Diskin, and other custodians was "no longer accessible." (Valles Decl., ¶ 16, Ex. G.) WalkMe continues to claim that the email accounts belonging to Sparks, Wong, Diskin,

and the other custodians identified in Workinger's and Hiles' evidence preservation letters were not preserved in any manner nor are they recoverable and any responsive information contained therein has been destroyed. (*Id.*) However, WalkMe now asserts some of Plaintiffs' emails were transferred into a cold-storage environment and that it searched the cold-storage data, but only for Plaintiffs' emails. (*Id.* at ¶ 24, Ex. J.) This is despite the fact that WalkMe previously asserted it conducted no such search, but now suddenly claims it did conduct such searches, which is completely contradictory and specifically designed to mislead both Plaintiffs and this Court. (*Id.* at ¶ 13, Ex. F.)[4]

These shifting explanations are particularly significant because they directly contradict WalkMe's prior representation that the repositories, information, communications and email data was "no longer accessible." (*Id.* at ¶ 16, Ex. G.) The inconsistency raises substantial questions regarding WalkMe's veracity, the adequacy of its preservation efforts, the completeness of its document production and searches in this case, and the full extent to which responsive ESI may have been lost, altered, or rendered inaccessible as Plaintiffs cannot even begin to identify all of the custodians and categories of information deleted by Defendants.

**D.    WalkMe Failed To Take Reasonable Steps To Preserve The ESI**

WalkMe states it only retained employee mailboxes and laptops if a hold or exception was placed on the account and that no hold or exception was placed here until nearly the end of 2024 despite admitting to receiving litigation hold notices over a year prior. (Valles Decl., ¶ 16, Ex. G.) In other words, the deletion of these mailboxes was not the result of an unavoidable system limitation, automatic process beyond WalkMe's control, or a lack of available preservation tools. Rather, WalkMe's own policies and procedures contemplated the preservation of all of the repositories, information, communications, data, and devices here when litigation or anticipated litigation required it, but WalkMe intentionally and deliberately failed to follow its own policies and procedures.

WalkMe's admissions also establish it possessed both the technical ability and administrative

---

[4] WalkMe has also remained silent regarding whether (i) metadata associated with any former employee mailboxes was preserved, (ii) attachments remain intact, (iii) deleted items remain recoverable, (iv) mailbox folder structures were maintained, or (v) the cold-storage repositories accurately reflect Plaintiffs' original mailboxes. Nor does WalkMe explain whether Google Vault preservation existed prior to the conversion of former employee accounts into cold storage, whether backups were maintained, or whether any responsive information was lost during the transition process.

authority to preserve all of the email accounts, information, communications and devices, but intentionally failed to do so. (*Id.*) WalkMe knew how to prevent deletion, had an established mechanism for doing so, and could have preserved the relevant repositories and devices simply by placing the appropriate hold or exception on the affected accounts. (*See id.*) Yet it refused to take those basic preservation steps even after receiving written preservation demands identifying the categories of custodians and information that were required to be maintained.

This was not a circumstance where preservation was impossible, unduly burdensome, or technologically infeasible. Nor was it a situation where WalkMe lacked notice of its preservation obligations. Rather, WalkMe possessed a mechanism specifically designed to prevent deletion of email accounts, repositories and devices (including Plaintiffs' laptops) but failed to utilize that mechanism despite receiving explicit preservation demands from Plaintiffs. (*See id.*) The resulting destruction of the mailboxes and laptops therefore occurred not because WalkMe lacked the ability to preserve the evidence, but because WalkMe knowingly, intentionally, and deliberately failed to take the readily available steps necessary to ensure the evidence was preserved.

**E.      The Lost ESI Cannot Be Restored Or Replaced**

Even accepting WalkMe's new explanations at face value, the lost ESI, laptops, and repositories cannot be restored or replaced through additional discovery. While WalkMe now contends that some information from Plaintiffs' email accounts was transferred into a cold-storage environment (despite previously representing it to be deleted) and that searches were performed on the repositories but only for information belonging to Plaintiffs (despite previously stating no such searches ever occurred), Plaintiffs have no means of verifying whether those repositories contain complete mailbox data, whether metadata has been preserved, whether deleted items remain available, whether other relevant custodian information is available or preserved, whether attachments were preserved, whether search functionality is materially impaired, or whether the repositories accurately reflect any of the custodians' original mailboxes. (*See* Valles Decl., Ex. G and J.) This is also all setting aside that critical communications, information and data in the repositories belonging to Sparks, Wong, Diskin, and other individuals identified in both Workinger's and Hiles' preservation letters has been completely deleted. (*Id.* at ¶ 16, Ex. G.) Even if some random isolated documents or communications

exist elsewhere, Plaintiffs cannot reconstruct the full contents of the destroyed email accounts, meaning the destruction of this ESI therefore resulted in the permanent loss of potentially relevant evidence that cannot be recreated through alternative means.

Furthermore, as noted above, WalkMe separately admits that all locally stored data on Plaintiffs' company laptops was permanently destroyed, which for Workinger was after WalkMe had unequivocally already received her evidence preservation letter that specifically demanded its preservation. (*Id.* at ¶ 21, Ex. I.) As noted above, Workinger did not even return her laptop until WalkMe had received the preservation letter because it contained critical dispositive information. (Workinger Decl., ¶¶ 7-8.) Rather than retain it, WalkMe intentionally wiped it to prevent Workinger from being able to use it in this litigation. (Valles Decl., Ex. I.) As a result, crucial and dispositive information on Workinger's laptop is lost forever and can never be recovered or recreated and can no longer be searched, recovered, or produced.  There is no mechanism that can correct his serious misjustice as the information on Workinger's laptop cannot be recreated anywhere and would have dispositively proven Workinger's claims of sexual harassment and discrimination against WalkMe and Sparks.

Most significantly, WalkMe admits the preservation mechanisms it ordinarily utilized for former employee data was never triggered because it never issued any legal hold or preservation exception despite openly admitting to receiving Workinger's preservation demand on August 30, 2023, and receiving Hiles' preservation letter on November 14, 2023. (Valles Decl., Ex. A, D, G.) Despite those preservation demands, WalkMe wiped Plaintiff's laptops, deleted former employee email repositories and transitioned some of Plaintiffs' data to "cold storage," and failed to implement the very preservation measures its own retention practices contemplated.

**F.    WalkMe Acted With The Intent To Deprive Plaintiffs Of The Use Of The Lost ESI**

The circumstances here support a finding of intent under Rule 37(e)(2). Most significantly, WalkMe admits it did not follow its own preservation mechanisms for former employee data even though WalkMe had received preservation demands for Workinger on August 30, 2023, and for Hiles on November 14, 2023. Despite those preservation letters, WalkMe wiped Plaintiffs' laptops (even though at least one laptop was not even received by WalkMe until September of 2023), deleted former

employee email repositories and transitioned some of Plaintiff's email data to "cold storage" where it was intermixed with other data (while deleting other data), and failed to implement the very preservation measures its own retention practices contemplated. (*See* Valles Decl., Ex. A, D, G, I, J.)

First and foremost, the timing further undermines any claim preservation was impossible. According to WalkMe, former employee email repositories were deleted and some information transitioned into cold storage approximately 30 days after separation. (*Id.* at Ex. J.) Workinger's employment ended on August 4, 2023, and her preservation demand was received by WalkMe on August 30, 2023, which is just three weeks after her termination and before the expiration of WalkMe's stated 30 day retention window. (*See id.*) Moreover, the letter was received prior to Workinger's laptop ever being sent back to WalkMe by Workinger. (*See* Workinger Decl., ¶¶ 7-8.) Thus, WalkMe received actual notice of anticipated litigation before its ordinary process for deleting former employee data would have occurred or before even receiving Workinger's laptop to wipe yet nevertheless failed to implement the preservation measures necessary to safeguard relevant ESI and prevent the wiping of Workinger's laptop that contained critical information for this case.

Second, WalkMe received preservation demands that were explicit in the information to be retained as well as the custodians for whom the information needed to be retained. (Valles Decl., Ex. A, D.) The letters were not vague or generalized requests to retain potentially relevant information; they specifically identified categories of custodians and repositories that Plaintiffs expected would contain relevant evidence. (*See id.*) They also required the retention of various devices (including Plaintiffs' laptops), email repositories, slack accounts, etc. (*See id.*) WalkMe intentionally ignored those specific detailed instructions and instead deliberated failed to take the steps necessary to preserve any relevant information, data, repositories, accounts, or devices.

Third, WalkMe is a sophisticated corporate litigant represented by multiple different law firms (including Littler Mendelson and Gordon Rees in this action) and in-house counsel. Both the August 30, 2023, and November 14, 2023, preservation demand letter were sent directly to WalkMe's General Counsel, CPO, and CRO. (*Id.* at ¶ 7, Ex. B.) WalkMe therefore cannot plausibly contend the preservation obligations were overlooked, misunderstood, or never communicated to the individuals responsible for legal compliance and personnel decisions. The preservation demands reached the

PLAINTIFFS' MOTION FOR SANCTIONS

highest levels of the organization and provided clear notice of the need to preserve relevant ESI. In fact, receipt of the letters by WalkMe was even expressly acknowledged by WalkMe's own outside counsel as well (i.e., Littler Mendelson) and produced in discovery in this action. (*Id.* at Ex. B, C.)

Fourth, WalkMe possessed a mechanism for preserving former employee mailboxes, repositories and devices (including laptops) but deliberately failed to implement it until over a year later. (*Id.* at ¶ 16, Ex. G.) WalkMe openly admits it did not issue or place a litigation hold with respect to this matter until a year after receiving our preservation letters (i.e., not until late 2024). (*Id.*) As a result, this is not a case in which relevant information was lost because of an unavoidable technical failure, an unforeseen system malfunction, or circumstances beyond WalkMe's control. Rather, WalkMe had an established process available to preserve information and deliberately decided against implementing it despite having received explicit preservation demands.

Fifth, WalkMe destroyed the precise repositories and devices identified in Plaintiffs' preservation demands. (*Id.* at ¶¶ 15-16, 24, Ex. G and J.) The destroyed mailboxes, repositories and laptops belong not to peripheral witnesses, but to the parties themselves and key management witnesses whose communications, documents and information are directly relevant to Plaintiffs' claims. Among the destroyed repositories are the mailboxes of individuals involved in management, personnel decisions, and communications concerning Plaintiffs' employment as well as Workinger's laptop that contained critical evidence that dispositively proved her claims of sexual harassment and discrimination. The destruction therefore affected some of the most important sources of contemporaneous evidence in the case and eliminated evidence that could have not only proven Plaintiffs' claims, but also disproved WalkMe's asserted defenses, stated motives, and decision-making processes.

Finally, WalkMe failed to disclose the destruction of the mailboxes and laptops until after substantial discovery had already occurred, thereby preventing Plaintiffs from investigating the destruction and developing a complete record regarding the lost evidence. By the time the destruction was disclosed, depositions and other discovery efforts had already proceeded without the benefit of the missing communications. The delayed disclosure deprived Plaintiffs of the opportunity to pursue any alternative sources of information while it may still have existed and hindered Plaintiffs' ability to bring this Motion earlier.

PLAINTIFFS' MOTION FOR SANCTIONS

Taken together, these facts support the conclusion that WalkMe consciously disregarded its preservation obligations to intentionally deprived Plaintiffs of the use of critical ESI in this litigation. WalkMe had clear notice of its duty to preserve, possessed the means to preserve the relevant evidence, failed to implement available preservation measures, allowed the destruction of specifically identified repositories and devices (including laptops) belonging to central custodians, and did not disclose that destruction until well into discovery. The cumulative effect of these circumstances supports a finding that the loss of the ESI was not merely negligent or accidental, but the result of conduct undertaken with the intent to deprive Plaintiffs of evidence relevant to their claims.

## IV. TERMINATING SANCTIONS ARE WARRANTED

The destruction of the email accounts and Plaintiff's laptops has irreparably prejudiced Plaintiffs' ability to prove their claims. Rule 37(e) was enacted specifically to address the loss of ESI that should have been preserved in anticipation of litigation, and where a party acts with the intent to deprive its opponent of the use of that information, the Court should impose the most severe sanctions available, including dismissal or default judgment. Fed. R. Civ. P. 37(e)(2)(C); *see also Newberry*, 750 F. App'x at 537 (affirming terminating sanctions where spoliation was willful and prejudicial); *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 958–61 (9th Cir. 2006) (affirming dismissal based on intentional destruction of relevant electronic evidence).

Here, the lost evidence cannot be restored or replaced through additional discovery. The destroyed repositories belonged not only to Plaintiffs themselves but also to key decisionmakers and custodians whose communications are central to the claims and defenses in this action. The emails and documents contained in the deleted email repositories are critical as they contained contemporaneous discussions, deliberations, instructions, reactions, and explanations that contradict Defendant's chosen narrative that now Plaintiffs have no way to refute. No amount of deposition testimony can recreate what was actually written, when it was written, who received it, or what information was shared among the relevant actors at the time decisions were made.

As a result, Plaintiffs can never know the full extent of communications among decisionmakers regarding Plaintiffs, their complaints, their performance, workforce reductions, or the reasons for their terminations. Nor can Plaintiffs identify what admissions, inconsistencies, discriminatory statements,

PLAINTIFFS' MOTION FOR SANCTIONS

retaliatory motives, or impeachment evidence may have existed within the destroyed mailboxes. This is precisely the type of prejudice that results when a party destroys evidence bearing directly on disputed issues in litigation. *See Apple*, 888 F. Supp. 2d at 992–93 (recognizing that prejudice exists where the contents of destroyed emails cannot be known and the opposing party is deprived of potentially relevant evidence).

Even worse, the evidence on Workinger's laptop directly proved her sexual harassment and discrimination claims as well as rebutted and disproved Defendants' defenses that they are asserting, but now that information is lost forever, which is precisely to Defendants' sole benefit.  No amount of deposition testimony can recreate the documents and information locally stored on Workinger's laptop, which would remove this case from a proverbial she said/he said claim to one that has dispositive written evidence that proves the harassment, retaliation and discrimination endured by Workinger. (Workinger Decl., ¶¶ 3-6.) However, that is all now lost forever, and Defendants are the only ones that stand to benefit from the destruction of this information.

What is particularly horrible about this situation is that Workinger knew her laptop contained critical information dispositive of her claims, but, rather than resort to any self-help mechanisms to access her laptop, she complied with her legal obligations to return her laptop without accessing it to preserve the information herself. (*Id.* at ¶¶ 7-8.) Although, because Workinger believed WalkMe would potentially destroy information, she deliberately waited until after WalkMe received her preservation letter to return the laptop to ensure its preservation. (*Id.* at ¶ 8.) Workinger trusted and relied on WalkMe's compliance with its required legal and ethical duties to retain the information. (*Id.* at ¶ 11.)  However, WalkMe utterly disregarded those obligations and intentionally destroyed the very evidence that would prove Workinger's case.  Therefore, Workinger has been punished for complying with her ethical and legal obligations while WalkMe has been greatly enriched for completely and utterly disregarding its obligations all to the detriment of Workinger.  There is no amount of discovery that can undo the damage done to Workinger or her ability to prevail on her claims at trial.

This information can also never be recreated as it contained Workinger's contemporaneous notes as well as specific documentation and evidence of the sexual harassment and discrimination that was

PLAINTIFFS' MOTION FOR SANCTIONS

only saved locally on her laptop. (*Id.* at ¶¶ 3-6.) The laptop also contained other documents related to her performance, sales, etc. that she also saved locally. (*Id.*) However, none of these documents can be recreated or recovered anywhere else as Defendant contends all such information either does not exist anywhere or was destroyed.  Thus, Workinger is left with no remedy for the prejudice she has been subjected to by WalkMe's actions.

The prejudice is also severe as WalkMe's destruction eliminated evidence from multiple critical custodians despite receiving explicit preservation demands identifying the very categories of information that were later destroyed. WalkMe had notice of its preservation obligations, possessed the ability to preserve the mailboxes, and nevertheless allowed them to be deleted. The destruction therefore deprived Plaintiffs of evidence from both sides of the employment relationship—the employees asserting claims and the managers and executives responsible for the challenged employment decisions. Such conduct strikes at the integrity of the judicial process itself. *See Leon*, 464 F.3d at 959 ("A party's destruction of evidence qualifies as willful spoliation if the party has some notice that the documents were potentially relevant to the litigation before they were destroyed.").

Because the destroyed evidence goes to the heart of core issues in this litigation (including the very documents that would prove their allegations) and because WalkMe acted with the intent required by Rule 37(e)(2), lesser sanctions are insufficient to remedy the resulting prejudice. An adverse inference instruction, evidentiary limitation, monetary sanction, or reopening of discovery cannot restore evidence that no longer exists that otherwise would dispositively prove Plaintiff's claims (especially Workinger's harassment and discrimination claims), cannot reveal the contents of communications that have been permanently erased, and cannot place Plaintiffs in the position they would have occupied had WalkMe complied with its preservation obligations. Where, as here, a party intentionally destroys irreplaceable evidence central to the claims and defenses in the case, terminating sanctions are warranted both to remedy the prejudice suffered by the opposing party and to protect the integrity of the judicial process. *See* Fed. R. Civ. P. 37(e)(2)(C); *Leon*, 464 F.3d at 958–61; *Newberry*, 750 F. App'x at 537.

PLAINTIFFS' MOTION FOR SANCTIONS

Accordingly, Plaintiffs respectfully request that the Court impose terminating sanctions pursuant to Rule 37(e)(2). In the alternative, Plaintiffs request issue sanctions, adverse inference sanctions, evidentiary sanctions, reopening of discovery at WalkMe's expense, attorneys' fees and costs, and such other relief as the Court deems just and proper.

## V.    CONCLUSION

WalkMe received explicit preservation demands on August 30, 2023 (for Workinger), which its own counsel expressly acknowledged WalkMe receiving, and November 14, 2023 (for Hiles). Those demands clearly instructed WalkMe to preserve Plaintiffs' laptops, the complete email repositories and other data related to Plaintiffs, their managers, other sales employees, employees in Plaintiff's management chains, individuals involved in employment decisions affecting Plaintiffs, and various other WalkMe employees that were expressly laid out in the preservation instructions. WalkMe nevertheless deliberately refused to place holds or preservation exceptions on the relevant custodian's email boxes and devices (including Plaintiff's laptops) until a year later in late 2024, and instead intentionally wiped Plaintiffs' laptops and permanently destroyed the email repositories belonging to Plaintiffs and other key custodians, including, but not limited to, Sparks, Wong, and Diskin.

The destroyed ESI falls squarely within WalkMe's preservation obligations, cannot be restored or replaced, and concerns the very individuals whose communications, data and information are not only central, but critical to Plaintiffs' claims and WalkMe's defenses.  As noted above, Workinger's laptop contained dispositive information that would have proved her claims of sexual harassment and discrimination while simultaneously disproving WalkMe's asserted defenses in this matter. Moreover, WalkMe's own admissions establish it possessed the ability to preserve these repositories and devices, deliberately failed to do so despite explicit preservation demands, and did not disclose the destruction of the evidence until after substantial discovery had already occurred. Under these circumstances, the record supports a finding that WalkMe acted with the intent to deprive Plaintiffs of the use of this evidence in litigation within the meaning of Rule 37(e)(2).

Accordingly, Plaintiffs respectfully request that the Court grant this Motion and impose terminating sanctions against WalkMe pursuant to Federal Rule of Civil Procedure 37(e)(2) as well as provide an award of Plaintiffs' attorneys' fees and costs.

DATED:  June 23, 2026

Respectfully submitted,

**VALLES LAW, P.C.**

By: _____
Daniel Valles
Kayla M. Rathjen
Chase Laurent

Attorneys for Plaintiff
JULIE WORKINGER AND JANELLE HILES

PLAINTIFFS' MOTION FOR SANCTIONS